# UNITED STATES DISTRICT COURT
# THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DESTINY WASHINGTON, individually and on behalf of all others similarly situated, | ) ) ) ) ) **Cause No. 1:20-cv-246** |
| Plaintiff, | ) ) |
| v. | ) **COMPLAINT - CLASS ACTION** ) **(JURY TRIAL DEMANDED)** ) |
| JOHNSON & WALES UNIVERSITY, | ) ) ) |
| Defendants. | ) ) |

Plaintiff Destiny Washington ("Plaintiff") by and through undersigned counsel, brings this action against Johnson & Wales University ("Defendant" or the "University") on behalf of herself and all others similarly situated, and makes the following allegations based upon information, attorney investigation and belief, and upon Plaintiff's own knowledge:

## PRELIMINARY STATEMENT

1. Plaintiff brings this case as a result of Defendant's decision to close campus, constructively evict students, and transition all classes to an online/remote format as a result of the Novel Coronavirus Disease ("COVID-19").

2. While closing campus and transitioning to online classes was the right thing for Defendant to do, this decision deprived Plaintiff and the other members of the Class from recognizing the benefits of in-person instruction, access to campus facilities, student activities, and other benefits and services in exchange for which they had already paid fees and tuition.

3. Defendant has either refused to provide reimbursement for the tuition, fees and other

costs that Defendant is no longer providing, or has provided inadequate and/or arbitrary reimbursement that does not fully compensate Plaintiff and members of the Class for their loss.

4. This action seeks refunds of the amount Plaintiff and other members of the Class are owed on a pro-rata basis, together with other damages as pled herein.

## PARTIES

5. Defendant Johnson & Wales University is an institution of higher learning located in Providence, Rhode Island; Charlotte, North Carolina; North Miami, Florida; and Denver, Colorado.[1]

6. Upon information and belief, Defendant is eligible to receive federal stimulus under the CARES Act. The CARES Act directs that approximately $14 billion be distributed to colleges and universities based upon enrollment and requires that institutions must use at least half of the funds they receive to provide emergency financial aid grants to students for expenses related to the disruption of campus operations due to COVID-19.

7. Plaintiff is an individual and a resident and citizen of the state of North Carolina.

8. Plaintiff was enrolled as a full-time student in Defendant's undergraduate program for the Spring 2020 term.

9. Plaintiff has paid substantial tuition for the Spring 2020 semester either out of pocket or by utilizing student loan financing, or otherwise.

10. There are hundreds, if not thousands, of institutions of higher learning in this country.

11. Some institutions of higher learning provide curriculum and instruction that is offered on a remote basis through online programming which do not provide for physical attendance

---

[1] Defendant also has a "College of Online Education."

      by the students.

12. Defendant's institution offers in-person, hands-on curriculum.

13. Plaintiff and members of the Proposed Tuition Class did not choose to attend another institution of higher learning, or to seek an online degree, but instead chose to attend Defendant's institution and enroll on an in-person basis.

14. Defendant markets the on-campus experience as a benefit of enrollment, listing student engagement and experiential learning as core University values:[23]

## Unique Educational Model

Just about every college is talking about experiential education. That's because it works. At Johnson & Wales, we've been perfecting this approach for more than 100 years.

We offer an optimal blend of intellectual development, industry-focused education, résumé-building work experiences, community and leadership opportunities, and an uncommon depth of career services.

At Johnson & Wales, experience is the difference. This means that experiential learning is much more than an internship tacked onto a major. It's woven into all aspects of our education, in and out of the classroom. You won't just learn theory. You'll turn it into real world practice. You'll work on real world projects in class, in our industry specific learning labs, and sometimes with real companies.

This approach is a more effective way to learn. Through these experiences, you'll be uniquely prepared for shifting industries and have the flexibility to pursue other career paths and entrepreneurial ventures.

By having campuses in 4 different major cities, JWU provides students with the opportunity to live, work, and study in an environment that's right for them, while remaining close to industry leaders within their chosen fields of study.

15. Common sense would dictate that the level and quality of instruction an educator can provide through an online format is lower than the level and quality of instruction that can be provided in person, and in any event was not what Plaintiff and the Class bought and paid for.

---

[2] https://www.jwu.edu/about-jwu/
[3] https://www.jwu.edu/academics/programs-by-campus/index.html

16. In fact, as noted above JWU admits that working on "real world projects in class, in [their] industry specific learning labs, and sometimes with real companies…is a more effective way to learn."

17. Moreover, the true college experience encompasses much more than just the credit hours and degrees.  The college experience consists of:

- Face-to-face interaction with professors, mentors, and peers;
- Access to facilities such as computer labs, study rooms, laboratories, libraries;
- Student governance and student unions;
- Extra-curricular activities, groups, intramurals;
- Student art, cultures, and other activities;
- Social development and independence;
- Hands-on learning and experimentation; and
- Networking and mentorship opportunities.

18. Defendant admits as much in its Undergraduate Viewbook[4]:



---

[4] Johnson & Wales University Undergraduate Viewbook accessible at: www.jwu.edu/viewbook/undergraduate-viewbook.

19. Plaintiff's education changed from in-person, hands-on learning to online instruction in the Spring 2020 term.

20. Plaintiff''s online instruction was not commensurate with the same classes being taught in person.

21. Defendant has already recognized the inherent inequality between the value of in-person and online instruction.

22. Even before the COVID-19 pandemic, Defendant offered an online degree program called its "College of Online Education" program.[5]

23. Defendant offered certain online degrees that were identical to the degrees offered on campus including bachelor's degrees in Hospitality Management, Culinary Arts and Food Service Management, and Business Studies, among others.[6]

24. However, Defendant charged significantly lower tuition for the online degrees than for the same corresponding on-campus degrees.

25. For the 2019-20 academic year, annual tuition was $33,054.00 for on-campus undergraduates.[7]

26. Freshman were entitled to 23.99 credit hours, and each other class approximately 33 credit hours.[8]

27. This means that for freshman, the cost per credit hour was approximately $1,377.82 and for other classes approximately $1001.63 for the on-campus in-person experience.

28. A student in Hospitality Management earning a four-year Bachelors of Science degree

---

[5] htttps://www.jwu.edu/academics/colleges/college-of-online-education.html
[6] Id.
[7] https://www.jwu.edu/admissions/paying-for-college/tuition-and-fees.html
[8] https://catalog.jwu.edu/handbook/academicinformation/class/

would need 120 credits to graduate.[9]

29. Prior to the COVID-19 pandemic, however, Defendant through its "The College of Online Education" offered credit hours at a flat rate of $330.00 per credit hour or a discount of between 67% and 76% from on-campus credits.[10]

30. That means that the price for an online degree in Hospitality Management from Johnson & Wales College of Online Education would cost $39,930.00 based on the 2019-20 prices, while the in-person, on-campus experience has a value of $132,216.00.

31. Upon information and belief, the increase for the in-person, on-campus tuition is reflective of the higher level of education provided and/or the access and services provided to on-campus students as opposed to on-line students. In any event, it costs far more than the online version, which was also available for Plaintiff to purchase at the time she purchased the in-person, on-campus experience.

## FACTUAL ALLEGATIONS

32. Upon information and belief, Defendant's undergraduate program offered Fall, Winter, and Spring sessions comprising the 2019-20 academic year, while the Graduate and Doctoral programs offered Fall, Spring and Summer sessions.

33. Spring term began with the first day of classes on or about March 9, 2020 for both the undergraduates and the Spring II portion of the Graduate and Doctoral programs.[11]

34. Upon information and belief, Defendant's Spring term for undergraduates was scheduled to conclude with the last day of examinations on or about May 22, 2020.[12]

35. However, as a result of the COVID-19 pandemic, Defendant announced on March 17,

---

[9] https://catalog.jwu.edu/programsofstudy/hospitality-management/hospitality-management-bs/online/
[10] https://online.jwu.edu/financial-aid/tuition
[11] https://www.jwu.edu/academics/academic-calendars.html
[12] Id.

2020 that students were required to move from campus by March 22, 2020, and that most services, including gym facilities, were cancelled or closed.[13]

36. In addition, all events "scheduled for the spring term [were] postponed or canceled."[14]

37. Students were instructed not to return to campus, and most "non-essential" campus facilities were closed.

38. Students living on campus were required to vacate campus absent exceptional circumstances.

39. Accordingly, Plaintiff and members of the proposed Tuition Class were deprived of the benefits of on-campus learning for the entire remainder of the Spring term.

40. However, Defendant has refused and continues to refuse to offer any pro-rated discounts or refunds on Spring 2020 tuition except for those associated with lab classes/fees:[15]

> **+ How is the university addressing tuition and room/board refunds for spring?**
>
> Students who were set to live on campus and scheduled for labs only during the spring term will be fully refunded for room and meals for the spring term. Students who were enrolled in lab classes will be refunded for the tuition costs associated with those labs. Students in non-lab academic classes will not be refunded tuition as courses were delivered online. Students in non-lab academic classes will have a 10% charge for housing and meals in the spring. We are aware that individual circumstances may require additional attention and support.

## JURISDICTION AND VENUE

41. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

42. This Court has personal jurisdiction over Defendant because Defendant is domiciled in Rhode Island and conducts business in Rhode Island.

---

[13] https://covid.jwu.edu/current-students; *see also* https://covid.jwu.edu/pvd-news/providence-campus-operations
[14] https://covid.jwu.edu/current-students
[15] https://covid.jwu.edu/studentsacademics-faq

43. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, upon information and belief, and because Defendant is a corporate body domiciled and doing business in this District.

## CLASS ACTION ALLEGATIONS

44. Plaintiff brings this action on behalf of herself and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Classes:

   **The Tuition Class:**

   All people who paid tuition for or on behalf of students enrolled in classes at the University for the Spring 2020 semester who were denied live in-person instruction and forced to use online distance learning platforms for the latter portion of that semester.

45. Excluded from the Classes are The Board of Trustees of Johnson & Wales University (or similar governing body) and any of their respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the judicial officers, and their immediate family members, and Court staff assigned to this case. Plaintiff reserves the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

46. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

47. This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

   **Numerosity: Fed. R. Civ. P. 23(a)(1)**

48. The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Plaintiff is informed and believes there are thousands of members of the Class, the precise number being unknown to Plaintiff, but such number being ascertainable from Defendant's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

### Commonality and Predominance: Fed. R. Civ. P. 23(a)(2)

49. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

   - Whether Defendant engaged in the conduct alleged herein;
   - Whether there is a difference in value between online distance learning and live in-person instruction;
   - Whether Defendant breached its contracts with Plaintiff and the other members of the Tuition Class by retaining the portion of their tuition representing the difference between the value of online distance learning and live in-person instruction;
   - Whether Defendant was unjustly enriched by retaining tuition payments of Plaintiff and the Tuition Class representing the difference between the value of online distance learning and live in-person instruction;
   - Whether certification of any or all of the classes proposed herein is appropriate under Fed. R. Civ. P. 23;
   - Whether Class members are entitled to declaratory, equitable, or injunctive relief,

    and/or other relief; and

- The amount and nature of relief to be awarded to Plaintiff and the other Class members.

### Typicality: Fed. R. Civ. P. 23(a)(3)

50. Plaintiff's claim is typical of the other Class member's claims because, among other things, all Class members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.

### Adequacy: Fed. R. Civ. P. 23(a)(4)

51. Plaintiff is an adequate Class representative because her interests do not conflict with the interests of other members of the Class he seeks to represent.  Plaintiff has retained counsel competent and experienced in complex litigation; and Plaintiff intends to prosecute the action vigorously.  The Class's interests will be fairly and adequately protected by Plaintiff and her counsel.

### Superiority: Fed. R. Civ. P. 23(b)(3)

52. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff and other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful conduct.

53. Even if Class members could afford individual litigation, the Court system likely could not.  Individualized litigation creates a potential for inconsistent or contradictory

judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, comprehensive supervision by a single court, and finality of the litigation.

### Certification of Specific Issues: Fed. R. Civ. P. 23(c)(4)

54. To the extent that a Class does not meet the requirements of Rules 23(b)(2) or (b)(3), Plaintiff seeks the certification of issues that will drive the litigation toward resolution.

### Declaratory and Injunctive Relief: Fed. R. Civ. P. 23(b)(2)

55. The University has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the Class members as a whole.

### FOR A FIRST COLLECTIVE CAUSE OF ACTION
### BREACH OF CONTRACT
### (Plaintiff and Other Members of the Tuition Class)

56. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

57. Plaintiff brings this count on behalf of herself and other members of the Tuition Class.

58. Plaintiff and the Tuition Class entered into contracts with the University which provided that Plaintiff and other members of the Tuition Class would pay tuition for or on behalf of students and, in exchange, the University would provide live in-person instruction in a physical classroom.

59. Plaintiff and other members of the Tuition Class fulfilled their end of the bargain when they paid tuition for the Spring 2020 semester either out-of-pocket or by using student loan financing, or otherwise.

60. The University breached the contract with Plaintiff and the Tuition Class by moving all classes for the Spring 2020 semester to online distance learning platforms, without reducing or refunding tuition accordingly.

61. The University retained tuition monies paid by Plaintiff and other members of the Tuition Class, without providing them the full benefit of their bargain.

62. Plaintiff and other members of the Tuition Class have suffered damage as a direct and proximate result of Defendant's breach, including, but not limited to, being deprived of the value of the services the tuition was intended to cover, namely live in-person instruction in a physical classroom on a physical campus, as opposed to on-line instruction.

63. As a direct and proximate result of Defendant's breach, Plaintiff and the Tuition Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include, but not be limited to, disgorgement of the difference between the value of the online learning which is being provided versus the value of the live in-person instruction in a physical classroom that was contracted for.

### FOR A SECOND COLLECTIVE CAUSE OF ACTION
### UNJUST ENRICHMENT
### (Plaintiff and Other Members of the Tuition Class)

64. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

65. Plaintiff brings this count on behalf of herself and other members of the Tuition Class.

66. This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply to, the contract-based claim set forth in the First Cause of Action above.

67. The University has received a benefit at the expense of Plaintiff and other members of the Tuition Class to which it is not entitled.

68. Plaintiff and other members of the Tuition Class paid substantial tuition for live in-person instruction in physical classrooms and did not receive the full benefit of the bargain.

69. Plaintiff and other members of the Tuition Class conferred this benefit on Defendant when they paid the tuition.

70. Defendant has realized this benefit by accepting such payment.

71. Defendant has retained this benefit, even though Defendant has failed to provide the services for which the tuition was collected, making Defendant's retention unjust under the circumstances.

72. Equity and good conscience require that the University return a portion of the monies paid in tuition to Plaintiff and other members of the Tuition Class.

73. Defendant should be required to disgorge this unjust enrichment.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of members of the Classes, prays for judgment in their favor and against Defendant as follows:

   a.   Certifying the Classes as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

   b.   Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this action;

   c.   Declaring that Defendant has wrongfully kept monies paid for tuition;

   d.   Requiring that Defendant disgorge amounts wrongfully obtained for tuition;

   e.   Awarding injunctive relief as permitted by law or equity, including enjoining

Defendant from retaining the pro-rated, unused monies paid for tuition;

f.       Scheduling a trial by jury in this action;

g.       Awarding Plaintiff's reasonable attorney's fees, costs and expenses, as permitted by law;

h.       Awarding pre- and post-judgment interest on any amounts awarded, as permitted by law; and

i.       Awarding such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

Dated June 1, 2020

**CARON LAW OFFICE**

/s/ *Robert J. Caron*
Robert J. Caron, Esquire
Bar No.: 5735
478A Broadway
Providence, Rhode Island 02909
P: (401) 621-8600
Email: rjcaron@robertjcaronlaw.com

-AND-

**ANASTOPOULO LAW FIRM, LLC**
Eric M. Poulin**
Roy T. Willey, IV**
32 Ann Street
Charleston, SC 29403
P: (843) 614-8888
Email: eric@akimlawfirm.com
        roy@akimlawfirm.com

-AND-

**MOREA SCHWARTZ BRADHAM**

**FRIEDMAN & BROWN, LLP**
John M. Bradham**
Peter B. Katzman**
444 Madison Ave., 4th Floor
New York, NY 10022
P: (212) 695-8050
Email: jbradham@msbllp.com
         pkatzman@msbllp.com

*** Pro Hac Vice Application Forthcoming*

**ATTORNEYS FOR PLAINTIFF(S)**