**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| DESTINY WASHINGTON, DEVIN HAZEL, and DORIS ALEXANDER, Individually and on behalf of all other similarly situated, | CASE NO. 1:20-cv-00246 |
| Plaintiffs, | **ORAL ARGUMENT REQUESTED** |
| v. | |
| JOHNSON & WALES UNIVERSITY, | |
| Defendant. | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

Plaintiffs Destiny Washington, Devin Hazel, and Doris Alexander, individually and on behalf of all others similarly situated, hereby file their Response in Opposition to Defendant Johnson & Wales University's Motion to Dismiss the Amended Complaint, and in support therefor, state the following:

**INTRODUCTION**

This case presents a simple question. When the COVID-19 pandemic struck the United States, forcing colleges and universities across the country to close their campuses and move operations online, where should the financial burden of those closures have been contractually allocated? Defendant Johnson & Wales University ("JWU") asks the Court to foist the burden on students alone, notwithstanding enforceable promises it made to provide on-campus education and experiences—both of which Plaintiffs Destiny Washington, Devin Hazel, and Doris Alexander paid expensive fees and tuition. Plaintiffs ask the Court to enforce the allocation of the burden according to their contracts with JWU by requiring partial refunds of that money to account for

1

the loss of the valuable on-campus college education and experiences. Plaintiffs' agreements with their school, as well as basic principles of fairness, require that result.

JWU's position is even more unreasonable given that the University offers a separate and distinct online only program – JWUOnline – at a substantial discount of over 50%. Simply put, if a student wanted to attend JWU in an entirely online manner, that student would have enrolled in JWUOnline. By choosing to enroll in JWU's in-person, on-campus programs, Plaintiffs reasonably expected to receive all the benefits associated with an in-person, on-campus education. JWU cannot argue otherwise in good faith.

This case is also one of a number of similar class actions brought by students seeking tuition and/or fee refunds in the wake of COVID-related campus closures. And in several recent decisions in such cases, courts following general principles of contract law and equity have denied motions to dismiss brought by universities and colleges on grounds similar to those that JWU raises in its Motion to Dismiss ("MTD") [D.E. 17]. *See, e.g., Rosado v. Barry University*, Inc., 2020 U.S. LEXIS 204355 (S.D. Fla. Oct. 30, 2020); *Salerno v. Fla. S. Coll.,* No. 8:20-CV-1494-30SPF, 2020 WL 5583522, (M.D. Fla. Sept. 16, 2020); *Waitt v. Kent State University*, No. 2020-00392JD, 2020 Ohio Misc. LEXIS 143 (Ohio Ct. Cl. Sept. 28, 2020); *Garland v. Western Michigan University*, No. 20-000063-MK, 2020 Mich. Ct. Cl. LEXIS 7 (Mich. Ct. Cl. Sept. 15, 2020); *Smith v. The Ohio State University*, Case No. 2020-00321JD (Ohio Ct. Cl., Sept. 9, 2020);[1] *McDermott v. Ohio State Univ.*, No. 2020-00286JD, 2020 Ohio Misc. LEXIS 127 (Ohio Ct. Cl. Aug. 24, 2020); *Mellowitz v. Ball State Univ. & Bd. of Trs. of Ball State Univ.*, No. 49D14-2005-PL-015026, 2020 Ind. Super. LEXIS 854 (Ind. Super. Aug. 14, 2020); *Milanov v. Univ. of Mich.*, Case No. 20-000056-MK,

---

[1] A true and correct copy of this case is attached hereto as Exhibit A, for the Court's convenience.

2020 Mich. Ct. Cl. LEXIS 1 (Mich. Ct. Cl. July 27, 2020); *Cross v. Univ. of Toledo*, No. 2020-00274JD, 2020 Ohio Misc. LEXIS 121 (Ohio Ct. Cl. July 8, 2020); and *Zahn v. Ohio Univ.*, Case No. 2020-00371JD (Ohio Ct. Cl., Oct. 19, 2020). This Court should do the same.

JWU argues, among other things, that this Court may not review the quality of education provided at an academic institution. However, in the Amended Class Action Complaint ("Complaint"), Plaintiffs adequately allege a claim for breach of contract resulting from JWU's failure to provide specifically promised services. The relevant inquiry is whether the services were provided per the parties' agreement—not whether they were adequate or appropriate. Plaintiffs also sufficiently allege an alternate unjust enrichment claim based on JWU's inequitable retention of money they paid for an in-person education. And Plaintiffs also adequately assert claims for conversion and money had and received – both also based on JWU's retention of money paid for in-person education that was not utilized for that purpose.

JWU is not entitled to retain money paid for services that it did not provide. This case is no more complicated than that. COVID-19 has not altered the basic law of contract and equity. For the reasons set forth herein, and consistent with the above-cited cases considering similar complaints, JWU's MTD should be denied in its entirety.

## BACKGROUND

Ms. Washington and Mr. Hazel, as well as Ms. Alexander's daughter, were enrolled as students at JWU for the Spring 2020 Trimester. Compl. at ¶¶ 11-13. JWU offers both in-person, hands-on degree programs and fully online degree programs. *Id.* at ¶¶ 2, 65, 66. Plaintiffs chose to attend JWU's on-campus program, with all the offered services that JWU promised to provide in consideration for Plaintiffs' enrollment. *Id.* at ¶¶ 5, 9, 40, 41, 67-71.

Specifically, JWU promised that upon registration and payment of tuition and fees, students were entitled to an entirely in-person, on-campus education and experience, including face-to-face academic instruction, along with a host of other educational services and extracurricular activities. *Id.* at ¶¶ 44, 106. Among many other statements and promises alleged throughout the Complaint, JWU promised hands-on, experiential, in-person learning:

> At Johnson & Wales, experience is the difference. This means that experiential learning is much more than an internship tacked onto a major. It's woven into all aspects of our education, in and out of the classroom. You won't just learn theory. You'll turn it into real world practice. You'll work on real world projects in class, in our industry specific learning labs, and sometimes with real companies.

*Id.* at ¶ 68. JWU also promises "access to state-of the art marketspaces, e-centers, laboratories, formal dining rooms, and advanced culinary stations," *id.* at ¶ 71, and access to "150+ student-run clubs and organizations," at its four campuses, and "live local and nationally touring bands, comedians, variety entertainers, and speakers for campus events and traditions." *Id.* Further, JWU differentiates between in-person and online classes by, for example, maintaining an entirely sperate website for its online program, publishing a stand-alone academic catalog for its online program that is separate and distinct from the four on-campus catalogs, and listing meeting time and physical classroom locations for its in-person classes on its registration portal (in contrast to listing only the class description for its online classes). *Id.* at ¶¶ 66, 84, 85. In addition, JWU charges different prices for its in-person versus online programs. *Id.* at ¶¶ 98-100.

In anticipation of the in-person, on-campus program promised by JWU, Plaintiffs paid all required tuition and fees for the Spring 2020 Trimester. *Id.* at ¶ 21. However, mid-way through the trimester, JWU suspended all in-person classes, transitioning to an online-only format, and announced that all university facilities would be closed, services discontinued, and events

cancelled. *Id.* at ¶ 31-36. JWU also informed students that it was closing all residence halls. *Id.* The campus shut-down continued through the remainder of the trimester. *Id.* ¶

Thus, Plaintiffs and other similarly-situated JWU students did not receive the on-campus experience they were promised and for which they paid. Yet JWU has refused to offer any pro-rated discount or refunds for Spring 2020 Trimester tuition or fees, including room and board fees, *id.* at ¶ 38, leaving students like Plaintiffs with no other option but to seek a fair refund through this legal action.

## LEGAL STANDARD

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs have stated such plausible claims for relief.

## ARGUMENT

### I.    MS. ALEXANDER HAS ARTICLE III STANDING

JWU argues that the "Court should dismiss each of Alexander's claims because parents lack standing to assert claims against universities on behalf of their adult children or based on such children's relationships with the schools." MTD at 8. Not so. Courts have allowed tuition-paying parents to sue educational institutions for "reimbursement of tuition payments made by [a parent] on behalf of his son." *Uddin v. New York Univ.*, 6 N.Y.S.3d 900, 900-01 (N.Y. App. Term 2014) (holding parent plaintiff stated "a viable breach of contract claim"); *Zumbrun v. Univ. of S. Cal.*, 25 Cal. App. 3d 1, 11 (1972) (recognizing that a non-minimal "departure from a projected course of study" would "entitle the student (*or his parent who paid for it*) to recover the tuition paid or any part of it.") (emphasis added). This result makes good sense, as courts recognize that a custom exists in which parents often pay for the University tuition of their children. *In re Knight*, No. 15-

21646, 2017 WL 4410455, *4 (Bankr. D. Conn. Sept. 29, 2017) ("[College Tuition] payments fulfill a parent's social obligation to maintain their family unit."); *Trizechahn Gateway, LLC v. Oberdick (In re Oberdick)*, 490 B.R. 687, 712 (Bankr. W.D. Pa. 2013) (referencing "a societal expectation that parents will assist with such expense if they are able to do so."). And it is well-established that college students are typically not financially independent. *See, e.g.*, 26 U.S.C. § 152(c)(3)(A)(ii) (defining "dependent" to include "a student who has not attained the age of 24 at the close of such calendar year"). Indeed, in order to qualify for Federal Student Aid at JWU, Federal regulations and University policy require students to report their parents' income by both Federal regulations and University policy, which JWU is required to verify. *See* 34 C.F.R. § 668.57; 34 C.F.R. § 668.56. Thus, JWU knew full well who was paying its students' tuition. JWU reaped the benefits of these tuition payments made by parents and now attempts to escape liability for the breach of the promises that induced those payments. If a parent can be required to pay tuition, it is logical that a parent should be able to sue a university for a failure to provide the services that were promised in exchange for that tuition.

The cases cited by JWU are distinguishable. In both *McCormick v. Dresdale*, No. 09-474-S, 2010 U.S. Dist. LEXIS 41848 (D.R.I. Apr. 28, 2010) and *Doe v. University of the South*, 687 F. Supp. 2d 744 (E.D. Tenn. 2009), the parent-plaintiffs sued regarding the respective school's alleged failure to fairly investigate sexual assault allegations levied against their sons. *McCormick*, 2010 WL 1740853, at *1; *Dresdale*, 687 F. Supp. 2d at 751. In other words, neither of the cases cited by JWU involved a school withholding the very product that was purchased with tuition and fees.[2]

---

[2] In the unlikely event that the Court concludes that Ms. Alexander lacks standing, her daughter is willing to substitute into this action to pursue these claims.

## II.    JWU'S IMMUNITY DEFENSE IS PREMATURE

JWU argues that North Carolina's Higher Education Immunity Act bars Plaintiff Washington's claims.  This argument is premature.  As an initial matter, Plaintiffs do not concede that North Carolina law controls those claims.  As JWU notes, the choice of law question turns on an "interest weighing test" which necessarily requires the court to consider facts not evident from the four corners of the Complaint.  For example, JWU is both incorporated and principally located in Rhode Island. Compl. at ¶ 16-17. JWU's corporate governance occurs in Rhode Island, and Rhode Island is where JWU makes decisions affecting contract formation and performance.  *Id.* Discovery will be required to inform the "interest weighing test" and is likely to show that the contracts at issue were made in Rhode Island, and that the contracts' subject matter is located, substantially or at least in part, in Rhode Island.  Indeed, JWU takes this position with respect to its Charlotte Campus website which is subject to "terms and conditions" stating "access to the Site shall be governed by and construed in accordance with the laws of the State of Rhode Island" and "[y]ou hereby irrevocably and unconditionally consent to submit to the exclusive jurisdiction of the courts of the State of Rhode Island and of the United States of America located in the State of Rhode Island for any litigation or disputes arising out of or relating to use of the Site."[3]

Moreover, even if North Carolina law applies, it does not follow that JWU is necessarily entitled to immunity.  The issue of immunity does not go to the sufficiency of the pleadings, but rather provides JWU an affirmative defense, and one on which JWU bears the burden of proof. *See Goldstein v. Galvin*, 719 F.3d 16, 24 (1st Cir. 2013) ("The immunity-seeker must carry the devoir of persuasion to show that an immunity applies.).  Here, JWU cannot carry that burden at the 12(b)(6) stage.  Immunity extends only to claims alleging loss or damage "arising from an act

---

[3] *See* https://www.jwu.edu/about-jwu/terms-of-use.html (Last Accessed Nov. 11, 2020)

or omission[4] by the institution of higher education during or in response to COVID-19, the [North Carolina Governor's] COVID-19 emergency declaration, or the [North Carolina Governor's] COVID-19 essential business executive order." *Id.* at § 116-311(a)(2).  Because JWU took the same actions across its campuses in multiple states, it is not clear that these actions were in any way as a result of the emergency orders issued by the Governor of North Carolina.  Nor does it follow that JWU's "act or omission" of failing to return unearned monies should be deemed "in response" to the pandemic. Likewise, the immunity "shall not apply to losses or damages caused by an act or omission of the institution of higher education that was in bad faith or malicious." *Id.* at § 116-311(c).  Plaintiffs allege facts that clearly demonstrate JWU acted in bad faith.

Finally, the immunity statute is plainly unconstitutional in as much as it violates the Contracts Clause of the United States Constitution and the Equal Protection and Takings Clauses of both the United States and North Carolina Constitutions.  The constitutionality of the statute is already being challenged by undersigned counsel in the Superior Court of North Carolina.[5]  As such, this Court need not take up the constitutionality of the statute at this juncture, but should abstain from considering the enforcement of it until the issue is settled in the appropriate forum. JWU's argument is particularly premature in this case because dismissal of Ms. Washington's claims at this juncture will do nothing to further judicial economy.  Ms. Washington is not the only Plaintiff in this lawsuit nor is JWU's North Carolina campus the only subject location.  This lawsuit will proceed regardless of whether Ms. Washington's claims are dismissed.  Whether North Carolina's immunity statute applies to students at the North Carolina campus is not relevant, if at

---

[4] Indeed, as will be raised as part of the constitutional challenge, the words "act or omission" do not indicate immunity for breach of contract actions at all as these words are traditionally used in the tort context.
[5] *See Dieckhaus et. al. v. Board of Governors of the University of North Carolina,* Superior Court, Orange County, File Number 20-cv-000564 (Filed May 22, 2020).

all, until the class certification stage.  As such, and especially in light of the pending challenge to the statute's constitutionality, the Court should abstain from addressing this issue at this time.

### III.    PLAINTIFFS' CLAIMS DO NOT ALLEGE EDUCATIONAL MALPRACTICE

As set forth in the sections below, JWU is unable to seriously contest that well-pleaded claims in Plaintiffs' Complaint.  Therefore, JWU must resort to attacking a straw man by mischaracterizing Plaintiffs' claims as ones for educational malpractice. In doing so, JWU advances an argument rejected by every court to have considered similar claims in this context. *See Rosado*, 2020 U.S. LEXIS 204355; *Salerno*, 2020 WL 5583522; *Waitt*, 2020 Ohio Misc. LEXIS 143; *Garland*, 2020 Mich. Ct. Cl. LEXIS 7; *Smith*, Case No. 2020-00321JD; *McDermott*, 2020 Ohio Misc. LEXIS 127; *Mellowitz*, 2020 Ind. Super. LEXIS 854; *Milanov*, 2020 Mich. Ct. Cl. LEXIS 1; *Cross*, 2020 Ohio Misc. LEXIS 121. Like the plaintiffs in those cases, Plaintiffs here do not seek a remedy for educational malpractice.

JWU relies on inapposite cases that are based on claims not at issue in this case or on claims premised on educational quality. *See, e.g., Bergeron v. New Hampshire*, 2018 U.S. Dist. LEXIS 217906, at *1 (D.N.H. Dec. 3, 2018), *report and recommendation adopted sub nom. Bergeron v. New Hampshire*, 2018 U.S. Dist. LEXIS 217177 (D.N.H. Dec. 28, 2018) (rejecting claim for educational malpractice where plaintiff alleged the public school system failed to adequately prepare him to assert his constitutional rights, in connection with plaintiff's petition to have criminal court cases and charges "dismissed, vacated and relieved."); *Ambrose v. New England Ass'n of Schs. & Colls., Inc.*, 252 F. 3d 488, 499 (1st Cir. 2001) (rejecting claim based on alleged misrepresentation regarding college accreditation, finding it sounded in negligent accreditation, based on same policy reasons courts reject claims for educational malpractice); *Doe v. Town of Framingham*, 965 F. Supp. 226, 230 (D. Mass. 1997) (finding plaintiff's "educational malpractice"

claim, based on the town's alleged failure to use due care in testing and placing him in an appropriate special education program, was not recognized under Massachusetts law); *Tubell v. Dade Cty. Pub. Sch.*, 419 So. 2d 388, 389 (Fla. Dist. Ct. App. 1982) (declining to recognize cause of action for educational malpractice where plaintiff complained of mis-testing and misclassification resulting in minor plaintiff being placed in improper special education program); *Paynter v. New York University*, 319 N.Y.S. 2d 893 (N.Y. App. Div. 1971) (finding court erred in substituting its judgment for that of the school in concluding that school was unjustified in suspending classes for the remainder of the school year). Each of these cases involved an allegation that a school provided substandard education or was otherwise unjustified in making academic choices.

Unlike the foregoing cases, this case does not involve judicial deference to academic decisions. Plaintiffs do not claim they are dissatisfied with the quality of the education they received or take issue with the specific ways that individual professors elected to teach their classes once remote learning was mandated. Plaintiffs do not challenge JWU's justifications for its response to the COVID-19 pandemic. Nor do Plaintiffs suggest, for example, that classes should not have been moved online, that classes should have been taught for a longer period online, or that the content of lesson plans should have been adjusted. Rather, Plaintiffs allege that JWU offered and Plaintiffs agreed to accept an in-person, on-campus educational experience with multiple benefits, services, experiences, and opportunities, for which they paid large sums of money. Yet despite paying those sums, Plaintiffs did not receive the benefits promised. Plaintiffs like all parties to a contract,[6] are entitled to receive the benefit of the bargain. The law does not

---

[6] It is undisputed that in this Circuit, "the relationship between a student and a private school is contractual," *Driscoll v. Bryant Univ.*, 393 F. Supp. 3d 153, 157 (D.R.I. 2019) (citing *Gorman v. St. Raphael Academy*, 853 A.2d 28, 34 (R.I. 2004)).

permit JWU to breach its contracts, refuse to issue appropriate refunds and insist that Plaintiffs (and other similarly-situated students) bear 100% of the loss resulting from JWU's breach.

While universities have educational autonomy and discretion over judgments as to the quality of its students' education, *see Gorman*, 853 A.2d at 24, that discretion does not allow universities to breach contractual promises made to their students. Even cases cited by JWU show that breach of contract actions can, indeed, be asserted against a university where such claims are properly pled and do not involve a judicial review of the quality of the education offered. *See, e.g., Gorman*, 852 A.2d at 39 (implying student can maintain breach of contact action against private school so long as contractual rule or regulation is not against public policy or law); *Driscoll*, 393 F. Supp. 3d at 157-58 (granting summary judgment in favor of university where plaintiff failed to prove breach of contract claim); *see also McClean v. Duke Univ.*, 376 F. Supp. 3d 585 (M.D.N.C. 2019) (dismissing student's breach of contract claim under North Carlina law based on finding no valid contract with the university); *Herrera v. Charlotte School of Law, LLC*, 2018 NCBC LEXIS 35 (N.C. Super. Apr. 20, 2018) (dismissing former students' breach of contract claims where they failed to identify a contractual promise the university failed to honor); *André v. Pace Univ.*, 655 N.Y.S.2d 777, 779 (N.Y. App. Div. 1996) (distinguishing plaintiff's impermissible educational malpractice claim, which alleged university breached its contractual agreement because it misrepresented the difficulty and required skills for a particular course, from a permissible breach of contract claim that is based on an alleged failure to provide any educational services or satisfy a contractual obligation to provide certain specified services).

JWU also cites *Atria v. Vanderbilt Univ.*, 142 F. App'x 246, 251 (6th Cir. 2005), which actually weakens its argument that Plaintiff's claims are claims for educational malpractice. In *Atria*, the court found the plaintiff's claim was not a claim for educational malpractice because it

did not allege the adequacy of the education the university provided; instead, it challenged a professor's allegedly negligent method of handing back graded answers sheets. *Id.* at 251. Like the plaintiff's claim in *Atria*, Plaintiffs' claims do not allege the adequacy of the education provided by JWU, but instead allege that JWU failed to provide certain services that it was contractually obligated to provide.

In an attempt to distract from the straightforward legal questions presented by the Complaint, JWU isolates allegations regarding the value of online education to portray the case as one involving educational preference. MTD at 16. However, this is not a situation where Plaintiffs are attempting to "repackage" a purported educational malpractice claim as a breach of contract claim, as JWU contends. *See* MTD at 17-18; *see also Smith*, Case No. 2020-00321JD (finding the "mere mention" that "online learning is substandard" does not change the "essence of plaintiff's breach of contract claim [] that she contracted for in-person classes and received online classes instead."). The few allegations about why most students prefer on-campus education, which demonstrate only that in-person and online educational programs are different products, do not convert Plaintiffs' claims into a claim for educational malpractice. Nor are Plaintiffs' claims undermined by the allegation that JWU charges less for online programs than it does for in-person, on-campus program. Again, these allegations demonstrate that there are objective criteria that JWU has determined warrant a lower rate for online programs (except apparently when students are *forced* into online classes). As such, this Court should reject JWU's attempt to recast Plaintiffs' claims as a claim for educational malpractice.

Likewise, this Court should reject JWU's claim that Plaintiffs are somehow trying to infringe upon JWU's academic freedom to decide "who may teach, what may be taught, *how it shall be taught*, and who may be admitted to study." *See* MTD at 18 (quoting *Sweezy v. New*

*Hampshire*, 354 U.S. 234, 263 (1957) (Frankfurter, J., concurring in result)). As the *Barry* court correctly noted, "The question is not whether Barry [University] was justified in closing its campus due to an unforeseen pandemic. Rather, the question is whether the risk (i.e., the financial burden) should be contractually allocated. That is what this lawsuit is about." *Barry*, 2020 U.S. Dist. LEXIS 204355, at *9-10. The same is true here. Plaintiffs' claims are not based on allegations that the online-only education offered after the campuses closed was of inferior quality, nor are Plaintiffs asking this Court to evaluate "the efficacy of the operations of [JWU]," or "make qualitative assessments of JWU's transition to remote learning and its provision of services appropriate for that transition." *See* MTD at 16-17. Rather, Plaintiffs' claims are based on the simple premise that the in-person, on-campus educational experience commands a higher price than the online-only educational experience, and that JWU's substitution of an in-person, on-campus educational experience with an online-only educational experience requires JWU to refund the pro-rated portion of any educational services, facilities, access and/or opportunities not provided.

## IV.   PLAINTIFFS SUFFICIENTLY ALLEGE A CLAIM FOR BREACH OF CONTRACT.

### A.   Plaintiffs have alleged that the parties' contract guarantees Plaintiffs' and the class members' right to an in-person education, and that JWU breached that contract.

Plaintiffs have alleged the existence of a contract for in-person education and that JWU breached its contractual obligations to students. Under Rhode Island law,[7] a plaintiff alleging breach of contract must show "(1) that a contract existed; (2) that there was a breach of the contract; and (3) that the breach caused the plaintiff damages." *Doe v. Brown Univ.*, 943 F.3d 61, 67 (1st

---

[7] Absent a choice-of-law analysis, Rhode Island law applies for purposes of this Motion; however, in an abundance of caution, Plaintiffs reference Florida and North Carolina law throughout to address issues raised in the MTD.

Cir. 2019).[8] Here, Plaintiffs have sufficiently alleged each element: first, that a contract for in-person education existed; second, that JWU breached that contract when it unilaterally moved all classes online and closed campus; and third, that this breach caused Plaintiffs and the class members damages by depriving them of the value for which they had paid.

### 1. JWU's documents and actions created a promise to provide in-person education.

First, Plaintiffs sufficiently allege the existence of a contract for in-person on-campus education. "A student's relationship to his university is based in contract." *Havlik v. Johnson & Wales Univ.,* 509 F.3d 25, 34 (1st Cir. 2007) (citing *Mangla v. Brown Univ.,* 135 F.3d 80, 83 (1st Cir. 1998). The relevant terms of the contractual relationship between a student and a university typically include language found in the university's student handbook. *Havlik,* 509 F. 3d at 34. The court interprets the terms of a student-university relationship "in accordance with the parties' reasonable expectations, giving those terms the meaning that the university reasonably should expect the student to take from them." *Id.* Contract ambiguities are construed against the drafter. *Haviland v. Simmons,* 45 A.3d 1246, 1259-60 (R.I. 2012); *City of Homestead v. Johnson,* 760 So. 2d 80, 84 (Fla. 2000); *Coulter v. Capitol Fin. Co.,* 146 S.E.2d 97, 102 (N.C. 1966). Based on the parties' written documents and agreements, as well as their prior conduct reflecting their intent, the parties contracted for Plaintiffs to pay for and receive an in-person, on-campus education.

---

[8] The elements are similar under Florida and North Carolina Law. *See Int'l Star Registry of Illinois v. Omnipoint Mktg., LLC,* 510 F. Supp. 2d 1015, 1022 (S.D. Fla. 2007) ("Under Florida law, the elements of a breach of contract action are: '1) a valid contract; 2) a material breach; and 3) damages.'")(citation omitted); *Martinez v. Univ. of N. Carolina*, 223 N.C. App. 428, 432, 741 S.E.2d 330, 332 (2012) ("The elements of breach of contract are (1) the existence of a valid contract and (2) breach of the terms of the contract." ) (quotations omitted).

### a.   Plaintiffs sufficiently allege the existence of an express contract for in-person education.

Plaintiffs have pled that JWU's documents and representations created an express contract to provide in-person education. Under the law of all three states, an express contract reduces to writing the mutual assent of the parties. *See J. Koury Steel Erectors, Inc. of Massachusetts v. San-Vel Concrete Corp.,* 120 R.I. 360, 365, 387 A.2d 694, 697 (1978) ("The distinction between an express or an implied contract is not based upon legal effect but upon the way in which mutual assent is manifested. In an expressed contract the terms and conditions . . . are assented to orally or in writing by the parties."); *Nautica Int'l, Inc. v. Intermarine USA, L.P.*, 5 F. Supp. 2d 1333, 1340 (S.D. Fla. 1998) (express contracts based upon mutual assent); *Marlen C. Robb & Son Boatyard & Marina, Inc. v. Vessel Bristol*, 893 F. Supp. 526, 538 (E.D.N.C. 1994) ("Express contracts are formed by the language of the parties, oral or written, which establishes their mutual assent to be bound, and contains consideration.").

Here, the express agreement to provide an in-person education is manifested in JWU's publications and actions. JWU's website markets the in-person, on-campus experience as an enrollment benefit, encouraging prospective students to apply in order to "Get Social at JWU Providence" and "Learn in advanced lab settings from our world-renowned faculty as you broaden your exposure to a wide range of experiences in the baking and pastry world." Compl. ¶¶41-42. JWU's strategic plan for the university further demonstrates the centrality of in-person educational experience at Johnson & Wales:

> Through FOCUS 2022, the university will offer students an excellent education characterized by academic rigor **and practical experiences**. Johnson & Wales University will be known for its exceptional and diverse faculty who are highly engaged in the most effective teaching and learning methods. We will endeavor to enroll a diverse student body **who will flourish at the campus of their choice** by bridging **classroom experiences** with the opportunities that abound in and outside of JWU.

*Id.* at ¶ 62 (emphasis added). JWU promises potential students that their experience will involve "experiential learning . . . woven into all aspects of our education, in and out of the classroom," promising students the opportunity to work on "real world projects in class" and "in our industry specific learning labs." *Id.* ¶ 68. When offered admission, students are told that "opportunities for involvement on campus" will afford them a "truly engaging, enriched college experience." *Id.* ¶ 74. JWU offers students on-campus experience including student activities, campus amenities, class size and student/teacher ratios, campus diversity, and campus locations. *Id.* ¶¶ 67-71.

Additional terms are set forth in JWU's 2019-2020 Course Catalogue and 2019-2020 Student Handbook ("Handbook"), which are provided to students upon enrollment and payment of their initial enrollment deposit. *Id.* ¶¶ 6, 76-78. The Course Catalog for each campus opens with a letter from the campus President that describes the campus culture and offerings. *Id.* ¶¶ 78-82. JWU offers a separate course catalog for its online-only programs. *Id.* ¶¶ 84-85. And, students like Plaintiffs, who enrolled in on-campus college, are prohibited from taking certain classes online and are limited in the number of online classes they are allowed, as provided in the Handbook. *Id.* ¶ 87. Once classes begin, they are subject to strict physical attendance requirements also set out in the Handbook. *Id.* ¶ 89. All of these written terms establish a promise by JWU to provide on-campus instruction in exchange for Plaintiffs' tuition payments.

The cases cited by JWU are not to the contrary. First, in *Montessori Children's House of Durham v. Blizzard*, 781 S.E.2d 511 (N.C. App. 2016), a case decided after a trial (not on a motion to dismiss), the court found only that magazine advertisements did not create a contract. In that case, unlike here, the family seeking to enforce an alleged agreement to limit class sizes did not allege that the school's handbook contained any enforceable promises. In *Lassiter v. Bank of North Carolina*, 551 S.E.2d 920 (N.C. App. 2001), a case decided on summary judgment, the court found

that no specific actions were promised; here, in contrast, Plaintiffs have identified several specific promises of an on-campus experience. Finally, *Aprigliano v. American Honda Motor Co.*, 979 F. Supp. 2d 1331 (S.D. Fla. 2013) concerns statements of puffery such as "the world's ultimate touring motorcycle." *Id.* at 1341. But here, Plaintiffs allege specific promises to provide an on-campus education, as opposed to an online-only education—which JWU also offers, subject to different terms, and at a lower price. JWU's post-hoc assertion that its promises to provide on-campus experiences in exchange for its hefty tuition are mere "puffery" or "sales tactics" is absurd. No reasonable person would interpret JWU's educational offerings as subject to being moved wholly online without access to campus. Therefore, the Court should reject JWU's arguments.

> **b.      Plaintiffs sufficiently allege the existence of an implied contract for in-person education.**

In addition to an express contract, Plaintiffs have also sufficiently alleged the existence of an implied contract. The parties intended for Plaintiffs to pay for and JWU to provide in-person, on-campus education, and that their conduct prior to March 13, 2020 manifested that agreement. "[A] contract implied in fact, or an implied contract in the proper sense, arises where the intention of the parties is not expressed, but an agreement in fact, creating an obligation, is implied or presumed from their acts . . . ." *Bailey v. West*, 249 A.2d 414, 416 (R.I. 1969) (citing 17 Corpus Juris Secundum § 4); *see also IDEARC Media LLC v. TSG Media, Inc.*, No. 09-60531-CIV-ZLOCH, 2010 WL 11505563, at *3 (S.D. Fla. 2010) ("A contract implied in fact can be inferred in whole or in part from the parties' conduct." (quoting *Baron v. Osman*, 39 So.3d 449, 451 (Fla. Dist. Ct. App. 2010))); *Miles v. Carolina Forest Ass'n*, 604 S.E.2d 327, 333 (N.C. Ct. App. 2004) ("An implied in fact contract is a genuine agreement between parties; its terms may not be expressed in words, or at least not fully in words. The term, implied in fact contract, only means that the parties had a contract that can be seen in their conduct rather than in any explicit set of

words."). Under the law of all three states – Rhode Island, Florida and North Carolina, an implied contract exists.

Here, as alleged, JWU provided Plaintiffs and the class members with an in-person, on-campus college experience, including several campus-based services and amenities, in exchange for tuition and fees. Each day for the weeks and months leading up to March 13, 2020, Plaintiffs and the class members attended physical classrooms to receive in-person instruction, which JWU provided, and had access to the full campus. Compl. ¶¶ 91-95. JWU charged a premium for an in-person education experience and students paid markedly more to receive an education on campus than their online peers. Compl. ¶¶ 44-45, 97-101.

This conduct is sufficient to demonstrate an implied contract based on the parties' intent and their expression of that intent through their conduct. In an analogous case, *JP Morgan Chase Bank, N.A. v. M/Y Brittany Leigh II*, No. 11-246-ML, 2012 U.S. Dist. LEXIS 36311 (D.R.I. Feb. 15, 2012), *report and recommendation adopted*, 2012 U.S. Dist. LEXIS 36315 (D.R.I. Mar. 12, 2012), the defendant contracted for marina services for the benefit of his boat and made periodic payments for almost two years. The court concluded that the defendant's "periodic payments" along with the plaintiff's "continued storage of the Vessel" evidenced that "both parties intended to be bound by this agreement for the provision of marina services in exchange for payment," creating an implied contract. *Id.* at *3. Here, Plaintiffs made tuition payments and attended school on campus until March 13, 2020. Like the payments and marina services exchanged in *JP Morgan Chase*, Plaintiffs' payments and JWU's continued provision of on-campus instruction and facilities evidenced that both parties intended to be bound by a contract for on-campus education.

And JWU's argument that there can be no "implied-in-fact contract" where a written argument exists is beside the point. JWU cannot argue, from one side of its mouth, that Plaintiffs

have failed to "allege an identifiable promise . . . that required the university to provide in-person courses and programs," MTD at 21, while also arguing, out of the other side of its mouth, that the Handbook is a "clearly expressed written document," MTD at 27. Plaintiffs agree that the Handbook is a clearly expressed written document expressing the intent to provide and pay for on-campus education, particularly when read alongside the other documents described above, *see supra* Part IV.A.1.a, but in the alternative, Plaintiffs assert that an implied contract was formed. Unlike in *Haddad v. Bryant Univ.*, No. 18-314-JJM-PAS, 2019 U.S. Dist. LEXIS 116977 (D.R.I. July 15, 2019), Plaintiffs do not allege that the parties' course of prior conduct *supersedes* the written agreements. Rather, their conduct is consistent with the written agreements, and to the extent there is not already a written contract in place (as JWU asserts), Plaintiffs allege that the parties' conduct created an enforceable contract implied in fact. [9]

### 2. Plaintiffs sufficiently allege that JWU breached its agreement to provide an on-campus college experience, and that the breach caused damages.

The second and third elements of a claim for breach of contract—a breach of the parties' agreement, and damages—are also satisfied. JWU moved classes entirely online, closed its campuses and housing, and discontinued on-campus events and services. This conduct violated its promises to provide in-campus education (a breach). JWU did not refund prorated tuition to reflect the value of access to in-person instruction and services Plaintiffs bargained for and did not receive, and JWU also did not refund prorated fees. Plaintiffs were harmed financially as a result of the

---

[9] *Cote v. Aiello*, 148 A.3d 537 (R.I. 2016), another case decide after trial, is also not to the contrary. There, based on a review of all the evidence in the record (not just the pleadings), the court concluded that the purported offer could not have reasonably been interpreted as an enforceable promise because the entirety of the circumstances gave rise to ambiguity and uncertainty. Moreover, the court specifically noted that "the doctrine of an implied-in-fact contract allows for a wider evidentiary net to prove the formation of a contract." *Id.* at 545. Yet here, Defendant asks the Court to dismiss this case at the outset before Plaintiffs have had any opportunity to more fully develop the evidentiary basis for their claims.

breach, because they did not receive the benefit of the bargain for which they had paid. The allegation of these remaining elements, therefore, completes the Plaintiffs' breach of contract claim.

Although JWU seeks respite in *Chong v. Ne. Univ.,* No. CV 20-10844-RGS, 2020 WL 5847626 (D. Mass. Oct. 1, 2020)*,* that case is distinguishable, including in the distinctions it made on the allegations made with respect to the *Chong* plaintiffs' fee-based claims as compared to their tuition-based claims. In *Chong*, the court held, *inter alia*, that certain fees were nonrefundable because they were paid only to "support" certain campus programs, but not to gain access to particular facilities or resources. *Id.* at *4. But the *Chong* court also found that payment of a particular recreation fee gave students "the option to gain admission to home athletic events" and to use athletic facilities. *Id.* Thus, the court found that the plaintiffs had stated a plausible claim for breach of contract with respect to the recreation fee. In addition, the court found that the plaintiffs had not stated a tuition-based claim for breach of contract because the plaintiffs had not "ple[d] that the course descriptions provided by the Northeastern Registrar comprised part of the parties' contract" but the court did not foreclose that such a contract could exist. *Id.* at *3.

Here, consistent with the *Chong* court's ruling on the recreation fee, Plaintiffs have alleged that they and other class members paid fees for on-campus housing to which they lost access. Compl. ¶ 23-29. And unlike the pleadings deemed insufficient in *Chong*, here, the Complaint's tuition-based claims include allegations that JWU's representations regarding in-campus education on JWU's website and marketing materials, and in its Handbook and Course Catalog, are part of the contract. Further, Plaintiffs have plausibly alleged that students attended JWU, and paid a premium on tuition, with the specific intent to access JWU's "Unique Educational Model"

and consequently to "learn by doing" in their vocational career of choice. Compl. ¶ 68. Therefore, these allegations do state a both a tuition- and fee-based claim for breach of contract.

### 3. The phrases that JWU cherry-picks from the Student Handbook do not allow JWU to charge the same tuition and fees for a materially different educational experience.

The statements that JWU cherry-picks from its Handbook purporting to give JWU the right to unilaterally "modify course requirements and programs of study" do not compel a different conclusion. Plaintiffs do not challenge JWU's right to "revise[] curricula," or "modify course requirements." Instead, their allegations plausibly focus on the complete elimination of all in-person, on-campus courses. At the pleadings stage, it is reasonable to construe JWU Handbook and other published materials as demonstrating, as alleged, the parties' intentions at the time the contract was formed; specifically, that JWU would provide, and Plaintiffs and the class members would pay for, an in-person, on-campus educational experience. *E.g.*, Compl. ¶¶ 79 (alleging that students are enticed to pay JWU tuition by promises of on-campus experiences); 84, 102-103 (in-person course catalog); 87-88 (alleging that the Handbook includes strict in-person attendance requirements and prohibits on-campus students from enrolling in certain online classes).

Absent COVID-19, moving all class online and closing campuses would have been a clear breach of the parties' agreement. And it is still a breach despite COVID, so JWU must compensate students who paid in full for tuition and fees without receiving their end of the bargain. *See, e.g.*, *Juno by the Sea Condo Apts., Inc. v. Juno by the Sea N. Condo Ass'n (The Tower), Inc.*, 418 So.2d 1190, 1192 (Fla. Dist. Ct. App. 1982) (concluding that where evidence showed that impossibility compelled modification of the parties' original contract, the plaintiffs were entitled to some damages based on the value of the final product compared to what was initially bargained for); *see also Iannuccillo v. Material Sand & Stone Corp.*, 713 A.2d 1234, 1237-38 (R.I. 1998) (finding

that changed circumstances did not support "complete absolution of responsibility under the contract" even though complete performance was impossible and affirming award of damages because the defendant "realized the full value of the contract" while the "plaintiff did not"). While COVID-19 may have made it impossible for JWU to continue providing in-person education, the "ultimate inquiry" for accepting or rejecting impossibility arguments is "whether the intervening changes in circumstance were so unforeseeable that the risk of increased difficulty or expense should not be properly borne by the party who declined to complete performance." *Iannuccillo*, 713 A.3d at 1238. Here, JWU asks the Court to decide as a matter of law that the burdens of COVID-19 should be borne by Plaintiffs and the class members alone, even though they paid full tuition and fees. JWU realized the full value of their agreement, while Plaintiffs and the class members did not. The Court should reject JWU's proposal, which is premature and inconsistent with principles of contract interpretation.

Any discretion held by JWU to modify course requirements or curricula must be considered within the framework of the parties' established practice prior to COVID-19. *See, e.g.*, *Cf. Brown v. Migneault*, No. 80-3111, 1982 R.I. Super. LEXIS 169, at *8 (R.I. Super. Nov. 26, 1982) (observing that the language of an agreement "should be construed with reference to the particular practice, background, and milieu which gave rise to its use" and finding that parties' "established . . . practice" bound the defendant). As with any contract, the parties' intentions control. *E.g.*, *Williams v. Metropcs Wireless, Inc.*, No. 09-22890-CIV-ALTONAGA/Brown, 2010 U.S. Dist. LEXIS 39225, at *14 (S.D. Fla. April 21, 2010); *Sturbridge Home Builders, Inc. v. Downing Seaport, Inc.*, 890 A.2d 58, 65-66 (R.I. 2005) (explaining that "a contract is to be construed with reference to the intent of the parties" that is "expressed in the instrument"); *see also Morrell v. Hardin Creek, Inc.*, 821 S.E.2d 360, 366 (N.C. 2018) ("Interpreting a contract requires

the court to examine the language of the contract itself for indications of the parties' intent at the moment of execution."). Here, notwithstanding that some changes may be made to a curriculum or course of study without resulting in a breach, the unmistakable intent expressed in the Handbook and Course Catalog is the intent to provide in-person education—not education that may be moved online at any time.

At a minimum, whether the contract terms cited by JWU give it the unilateral discretion to close campus and move all instruction online is a question of fact for the jury. It is not at all clear, as JWU argues, that the discretion to "modify course requirements and programs of study" and "revise[] curricula" includes the unilateral right to cease on-campus education. "[A]lthough contract interpretation is a question of law, when the contract terms are ambiguous, interpretation of the terms becomes a question of fact." *Botelho v. City of Pawtucket Sch. Dep't*, 130 A.3d 172, 177-78 (R.I. 2016) (citing *Inland Am. Retail Mgmt. LLC v. Cinemaworld of Fla., Inc.*, 68 A.3d 457, 464 (R.I. 2013)). Ambiguities therefore must not be resolved before trial. *Botelho*, 130 A.3d at 178 ("We have often recognized that an ambiguity in a contract cannot be resolved on summary judgment." (alteration omitted)); *see also Entourage Custom Jets, LLC v. Air One MRO, LLC*, No. 18-22061-WILLIAMS, 2020 U.S. Dist. LEXIS 81361, at *4-5 (S.D. Fla. May 8, 2020) (denying summary judgment because "if the contract contains ambiguities, a question of fact for the jury may be presented"); *Holshouser v. Shaner Hotel Grp. Props. One Ltd. P'ship*, 518 S.E.2d 17, 22 (summary judgment inappropriate where contract was ambiguous). Here, JWU asks the Court to resolve the ambiguity and define the scope of its right to "revise[] curricula" and "modify course requirements" based on the pleadings alone. Such a resolution would be inappropriate at this stage.

JWU not only asks the Court to resolve this ambiguity prematurely; it also asks the Court to construe the language in the Handbook and Course Catalog in its favor and against the Plaintiffs,

which the Court also may not do. On a motion under Rule 12(b)(6), the Court must construe all facts in Plaintiffs' favor, not JWU's. Further, basic principles of contract law require the Court to construe the contract against JWU because it drafted the Handbook and the Course Catalog. *See, e.g., Haviland v. Simmons*, 45 A.3d 1246, 1259-60 (R.I. 2012) ("This Court has stated that when an ambiguity exists such that a contract term is capable of more than one reasonable interpretation, such ambiguities . . . must be construed against the drafter of the document.") *Auto-Owners Ins. Co. v. Anderson*, 756 So.2d 29, 35-36 (Fla. 2000) (stating court is "obligated" to construe ambiguous clause against drafter); *Novacare Orthotics & Prosthetics E., Inc. v. Speelman*, 528 S.E.2d 918, 921 (N.C. App. 2000) ("[W]hen an ambiguity is present in a written instrument, the court is to construe the ambiguity against the drafter—the party responsible for choosing the questionable language."). Here, Plaintiffs plausibly allege that the Handbook and Course Catalog contain enforceable promises of in-person education, and do not permit JWU to move all instruction online and close campus without providing refunds. To the extent there are ambiguous terms that may or may not permit such conduct, at least at the pleadings stage, the Court must construe those terms against JWU.

### 4. Plaintiffs have not waived their claims by accepting remote learning.

Contrary to JWU's argument, Plaintiffs have not waived their claims by accepting remote learning. *See* MTD at 24-25. JWU's argument is based on the incorrect premise that Plaintiffs seek to avoid paying tuition altogether. *See id.* at 25 ("[Plaintiffs] cannot now demand back the tuition they paid while retaining the full benefits of such tuition."). To the contrary, Plaintiffs *have* fulfilled their obligations by paying their full tuition for the Spring 2020 academic trimester. Compl. ¶¶ 11-13. And they seek only "the pro-rated portion of any Spring 2020 Trimester tuition and fees for educational services, facilities, access and/or opportunities not provided since JWU

shut down on March 13, 2020." *Id.* ¶ 110. This factual difference distinguishes the authorities cited by JWU. *See André v. Pace Univ.*, 655 N.Y.S.2d 777, 778, 781 (N.Y. App. Div. 1996) (plaintiffs had not paid full tuition and sought to avoid paying any tuition); *Roe v. Loyola Univ. New Orleans*, 2007 U.S. Dist. LEXIS 86944-3, at *2-3 (E.D. La. Nov. 26, 2007) (same).

Furthermore, JWU misstates the law of waiver. Under Rhode Island law, "waiver is the voluntary intentional relinquishment of a known right." *Haxton's of Riverside, Inc. v. Windmill Realty, Inc.*, 488 A.2d 723, 725 (R.I. 1985). "As a general rule, the question of whether a party has voluntarily relinquished a known right is one of fact for a jury." *Id.* at 725-26. Thus, waiver is not an appropriate inquiry at the motion to dismiss stage. Moreover, the facts do not support a finding of waiver. Plaintiffs retained counsel within weeks of JWU's breach and promptly brought suit. There was no waiver. *See, e.g.*, *Mgmt Capital, L.L.C. v. F.A.F., Inc.*, 209 A.3d 1162, 1177 (R.I. 2019) (finding no waiver where plaintiff filed suit months after learning of intent to breach).

JWU also ignores the doctrine of election of remedies. "Generally, once a party has repudiated an agreement, the nonbreaching party may maintain a claim for breach, even [when] the time for performance has yet to come." *Id.* at 1177. "To do so, the nonrepudiating party usually has three options: (1) 'rescind the contract altogether, and if any performance has already been rendered by the injured party, to recover its value'; (2) 'elect to treat the repudiation as a breach either by bringing suit promptly, or by making some change of position'; or (3) 'await the time for performance of the contract and bring suit after that time has arrived.'" *Id.* (citing 23 Williston, *Contracts* § 63:33 at 606-09 (4th ed. 2014)). Plaintiffs did precisely that. Upon learning that JWU would breach its contract, Plaintiffs choose to treat the repudiation as breach and brought suit promptly. In so doing, Plaintiffs preserved their right to seek damages from the breach. *Mgmnt Capital*, 209 A.3d at 1177.

Finally, JWU's argument that "[p]rinciples of equitable estoppel…bar plaintiffs['] breach of contract claim" is absurd. MTD at 26. First, as mentioned above, Plaintiffs do not "seek to be relieved of the burden of paying." *Id.* They already did pay. Compl. ¶¶ 11-13. Contrary to JWU's argument, Plaintiffs do not seek to be relieved of fulfilling their agreement, which they already fulfilled. Having done so, Plaintiffs cannot be "estopped" from requesting that JWU compensate them for failing to make good on its end of the bargain. While "[p]laintiffs accepted all earned credits and grades" received from remote learning, they did so at more than 120% the cost than students who enrolled in JWUOnline, while receiving the same remote learning product. Permitting JWU to retain those excess monies is the inequity here, not Plaintiffs' claims.

## V.    PLAINTIFFS SUFFICIENTLY ALLEGE A CLAIM FOR UNJUST ENRICHMENT AND A CLAIM FOR MONEY HAD AND RECEIVED

JWU raises two flawed arguments against Plaintiffs' alternate claim based on unjust enrichment, as well as Plaintiffs' claims for money had and received. *First*, JWU misleadingly asserts that "[w]here there exists an express contract between the parties, equitable doctrines such as unjust enrichment are unavailable." MTD at 29 (quoting *Pickett v. Ditech Fin., LLC*, 322 F. Supp. 3d 287, 293-94 (D.R.I. 2018) (Rhode Island law) and citing *American Marine Tech, Inc. v. World Group Yachting*, 418 F. Supp. 3d 1075 (S.D. Fla. 2019) (Florida law)). *Second*, JWU cites cases such as *S. Cty. Post & Beam, Inc. v. McMahon*, 116 A.3d 204 (D.R.I. 2015) (Rhode Island law), *Law Offices of John L. Juliano, P.C. v. Jensen*, 673 F. App'x 291 (4th Cir. 2016) (North Carolina law), and *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329 (11th Cir. 2012) (Florida law) – which stand for the unremarkable proposition that inequitable conduct must be alleged – JWU improperly argues that Plaintiffs do not sufficiently allege circumstances under which it would be "inequitable" for JWU to retain the monies paid for tuition and fees paid. MTD at 30 (quoting *McMahon* at 210-11). Both arguments are without merit.

First, it is well established that unjust enrichment claims may be pled in the alternative to breach of contract claims, especially when (as here) one party challenges the existence of the contract upon which the other party seeks contractual relief. For example, in *Cappalli v. BJ's Wholesale Club, Inc.*, No. CV 10-407S, 2011 U.S. Dist. LEXIS 70338 (D.R.I. June 30, 2011), the court explained that "it is permissible under Rhode Island law to plead an equitable cause of action in the alternative where an express contract exists." *Id.* at *3. Moreover, as was recently explained in *Half Moon Ventures, LLC v. Energy Dev. Partners, LLC*, No. CV 18-685-JJM-PAS, 2019 U.S. Dist. LEXIS 84229 (D.R.I. May 20, 2019), also applying Rhode Island law, "if [a] benefit is conferred under a contract and the contract is breached, voidable, unclear, or otherwise flawed, a party under contract may recover under a theory of unjust enrichment." *Id.* at *5; *see also Hasbro, Inc. v. Mikohn Gaming Corp.*, No. CIV.A. 05-106 S, 2006 U.S. Dist. LEXIS 52641, at *28 (D.R.I. July 18, 2006) ("the Rhode Island Supreme Court has approved of parties proceeding to trial with alternate claims for breach of contract and unjust enrichment").

Florida law is similar. For example, as the court explained in *Silver Crown Investments, LLC v. Team Real Estate Mgmt., LLC*, 349 F. Supp. 3d 1316 (S.D. Fla. 2018):

> Defendants argue that Plaintiffs unjust enrichment count must be dismissed because Plaintiffs cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists between the parties. *This proposition,* while true, *is only operative upon a showing that an express contract exists—not upon a mere allegation of an express contract. Thus, "[u]ntil an express contract is proven, a motion to dismiss a claim for unjust enrichment on these grounds is premature.*"

*Id.* at 1332 (quoting *Martorella v. Deutsche Bank Nat'l Trust Co.*, 931 F. Supp. 2d 1218, 1228 (S.D. Fla. 2013) (emphasis added; internal citations omitted). Indeed, just last month, a Florida district court cited *Silver Crown* in support of its denial of a motion to dismiss similar breach of contract <u>and</u> *alternate* unjust enrichment claims brought by a student against her university for failing to refund monies after closing campus in the wake of COVID-19. *See Rosado v. Barry*

*University*, Inc., 2020 U.S. LEXIS 204355, *15 (S.D. Fla., Oct. 30, 2020) ("it is equally clear that a plaintiff may assert a claim for unjust enrichment as an alternative to a contract claim").

Here, Plaintiffs bring their unjust enrichment claim in the alternative to their breach of contract claims (Compl. ¶ 113), and JWU challenges the existence of the contract and enforceability of terms upon which Plaintiffs seek relief (*see, e.g.,* MTD at 2). Therefore, especially at pleading stage, it would be improper to dismiss Plaintiffs' alternate unjust enrichment claim. *See Cappalli*, 2011 U.S. Dist. LEXIS 70338 at *3; *Half Moon Ventures,* 2019 U.S. Dist. LEXIS 84229 at *5; *Rosado*, 2020 U.S. LEXIS 204355, at *15; *Silver Crown*, 349 F. Supp. 3d at 1332.

JWU's reliance on *Chong v. Ne. Univ.*, No. CV 20-10844-RGS, 2020 WL 5847626 (D. Mass. Oct. 1, 2020), which, in turn relied on *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017), is again misplaced – in particular because *Chong* is based on Massachusetts law. In *Chong*, the court concluded that the plaintiffs could assert a breach of contract claim based on the annual financial responsibility agreement (the sole contract in question in that case, since the plaintiffs failed to plead that the course catalog and other similar documents formed the basis of their contract with the university defendant). Accordingly, the plaintiffs were not permitted to "override" that contract via an unjust enrichment claim. *Id.* at *4. Here, in contrast,  Plaintiffs have pled that the representations regarding on-campus education on JWU's website and marketing materials, and in its Handbook and Course Catalog, are also part of their contract. Compl. ¶¶ 76-85. Unlike in *Chong*, Plaintiffs are not trying to "override" their contract via an unjust enrichment claim; rather, if the Court concludes that no contract exists, as JWU argues, Plaintiffs assert the

unjust enrichment claim in the alternative. This is permissible regardless of what state's law applies.[10]

JWU's second argument against Plaintiffs' unjust enrichment claim (and, in a single paragraph at the end of the brief, against Plaintiffs' money had and received claim) is a similar premature attack on the pleadings. JWU seeks to make factual arguments, such as justifying its closure of campus. But JWU's assertion that it "reasonably believed" it needed to close campus, and still provided "an education, academic credits, or uninterrupted progress towards their degrees" (MTD at 30), does not mean that the Complaint does not sufficiently allege the required elements of an unjust enrichment claim – namely that [1] JWU received a benefit from Plaintiffs (student payments), [2] JWU appreciated the benefit (it kept the monies), and [3] it would be inequitable for JWU to retain the benefit (because JWU did not provide students with the full amount of promised services for those payments – *i.e.*, a full trimester of on-campus classes and other educational experiences). *See McMahon*, 116 A.3d 204, 210-211 (Rhode Island law; "'to recover for unjust enrichment, a claimant must [allege and then] prove: (1) that he or she conferred a benefit upon the party from whom relief is sought; (2) that the recipient appreciated the benefit; and (3) that the recipient accepted the benefit under such circumstances that it would be inequitable for the recipient to retain the benefit without paying the value thereof.'"); *accord Am. Marine Tech,*

---

[10] Even under Massachusetts law, when there is an interplay of multiple materials that need to be assessed in order to determine whether there exists a right to contractual relief, a complaint alleging breach of contract can also allege an alternate claim for unjust enrichment – "it is accepted practice to pursue both theories at the pleading stage." *Tomasella v. Nestle USA, Inc.*, 962 F.3d 60, 84 (1st Cir. 2020) (explaining that under *Lass v. Bank of America, N.A.*, 695 F.3d 129 (1st Cir. 2012), such alternate pleading is proper despite the holding in *Shaulis v. Nordstrom* – which the *Chong* court relied on). So, even if Massachusetts law were to apply (it does not), it would not bar Plaintiffs' alternate claim for unjust enrichment.

*Inc.*, 418 F. Supp. 3d at 1083 (Florida law); *Homeq v. Watkins*, 572 S.E.2d 871, 873 (N.C. App. 2002) (North Carolina law).

Again, the court's decision in *Rosado* is on point. In that case, when rejecting the same argument that JWU makes here that the "inequity" was insufficiently alleged, the court properly explained that allegations the plaintiff lost the benefits of services and amenities satisfied the elements of unjust enrichment at the pleadings stage:

> Rosado alleges that Barry [University] has been unjustly enriched by retaining the full tuition and fees paid by her and similarly situated students for the full Spring 2020 semester. Rosado alleges that she lost the benefits of those services and amenities when Barry suspended in-person classes and forced Rosado to move out. She states further that Barry retained the tuition and fees paid by Rosado even though it did not provide the services for which payments were made…. *Although Barry disputes that the retention of the payments was "unjust," a motion to dismiss tests the sufficiency of the pleading, not the merits of the case*.

*Rosado*, 2020 U.S. LEXIS 204355, at *15 (emphasis added).

Further, even if North Carolina law (or Massachusetts law) were to apply, neither *Krebs v. Charlotte Sch. of Law, LLC*, No. 3:17-CV-00190-GCM, 2017 U.S. Dist. LEXIS 143060 (W.D.N.C. Sept. 5, 2017) – applying North Carolina law, nor *Bleiler v. College of Holy Cross*, 2013 U.S. Dist. LEXIS 127775 (D. Mass. Aug. 26, 2013) (a summary judgment case applying Massachusetts law), support an analysis or outcome different than that in *Rosado*. Here, unlike in *Krebs*, Plaintiffs have alleged that they did not receive the "benefit for which they paid" (*Krebs*, 2017 U.S. Dist. LEXIS 143060 at *18), which was not just some general education or academic credit but a specific on-campus experience. Nor is this case like *Bleiler*, in which the defendant argued that the university breached its contract by denying him a diploma after he was expelled for sexual assault. There, the court found that the university had complied with its contract by providing him a fair disciplinary process, and that it was in any event not unjust to withhold his diploma under the circumstances. 2013 U.S. Dist. LEXIS 127775, at *51-52, 56. Here, in contrast,

plaintiffs allege that JWU *did not* follow the terms of its agreements and, to the extent the court agrees a contract exists, that JWU unjustly retained moneys despite failing to provide the promised on-campus benefits and instruction.

Again, this case is more like the on-point *Rosado* case, because Plaintiffs here allege that they paid for, but did not receive, a full trimester of on-campus education and other educational experiences (*see Rosado*, 2020 U.S. LEXIS 204355, at *2-3). Under these circumstances, it is inequitable to permit JWU to retain the tuition and fees that Plaintiffs paid, and the claims for unjust enrichment and money had and received are sufficiently pled.[11]

## IV.   PLAINTIFFS SUFFICIENTLY ALLEGE A CLAIM FOR CONVERSION

JWU also raises two flawed arguments against Plaintiffs' claim based on conversion, which can also be brought in the alternative. *First*, JWU misleadingly asserts that "[a]bsent a wrongful act independent of a contractual obligation, the economic loss doctrine bars parties to a contract from bringing tort claims." MTD at 32 (citing, for example, *W. Reserve Life Assur. Co. of Ohio v. Conreal LLC*, 715 F. Supp. 2d 270, 289 (D.R.I. 2010), *on reconsideration in part sub nom. W. Reserve Life Assur. Co. of Ohio v. Caramadre*, 847 F. Supp. 2d 329 (D.R.I. 2012), *aff'd sub nom. W. Reserve Life Assur. Co. of Ohio v. ADM Assocs., LLC*, 793 F.3d 168 (1st Cir. 2015)). *Second*,

---

[11] Defendant does not cite any authority in support of its implicit argument that Plaintiffs are required to allege that Defendant acted with the intent to improperly enrich itself. *E.g.*, MTD at 31. Nor is there any requirement to plead bad faith or wrongful intent. *See, e.g., Merchants Mut. Ins. Co. v. Newport Hosp.*, 108 R.I. 86, 93, 272 A.2d 329, 332 (1971) (under Rhode Island law "it is not necessary in order to create the obligation to make restitution or to compensate that the party unjustly enriched be guilty of a tortious or fraudulent act"); *Goldberg v. Chong*, No. 07-20931-CIV-HUCK, 2007 U.S. Dist. LEXIS 49980, at *26 (S.D. Fla. July 11, 2007) (under Florida law "[n]either wrongdoing, nor fraud nor mistake are a requirement for a finding of unjust enrichment. Rather, the Court simply needs to examine whether 'in equity and good conscience' the Receiver is entitled to reimbursement."); *see also Pendergrass v. Massengill*, 269 N.C. 364, 371, 152 S.E.2d 657, 662 (1967) (North Carolina law; "The record discloses no breach of contract, misrepresentation or other wrongdoing by, or any unjust enrichment of Home Savings & Loan Association.").

citing cases such as *Montecalvo v. Mandarelli*, 682 A.2d 918, 929 (R.I. 1996), JWU improperly argues that Plaintiffs cannot make a conversion claim for money. *See* MTD at 33.

Both of these arguments are also without merit. First, similar to the discussion in the section immediately above, Plaintiffs can, in the alternative, allege a claim for relief based on conversion. So, for example, in the event Plaintiffs do not later prove that the alleged contract exists, the economic loss rule, which only comes into play when there is a contract, would not act as a bar to Plaintiffs' conversion claim. *See, e.g., Saeme v. Levine*, No. 11-21913-CIV, 2011 WL 13323214, at *2 (S.D. Fla. July 21, 2011) ("[A]lthough Plaintiff has alleged the existence of an oral contract, it is not apparent that contractual privity is undisputed. Accordingly, dismissal of Plaintiff's tort claims pursuant to the economic loss rule would be premature."); *see also Sweeney v. Kimberly-Clark Corp.*, No. 8:14-CV-3201-T-17EAJ, 2015 U.S. Dist. LEXIS 123080, at *18 (M.D. Fla. Sept. 15, 2015) ("At this stage the Court will allow Plaintiffs to plead unjust enrichment in the alternative, and will address the duplicative nature of the allegations and the operation of the economic loss rule—if applicable—at summary judgment.").

But to the extent Plaintiffs do succeed in later proving that the alleged contract binds the parties, even cases cited by JWU recognize an exception – which applies here – to the economic loss rule; specifically, that the economic loss rule does not apply to "ordinary 'consumers [who] deal with commercial entities'" *W. Reserve Life*, 715 F. Supp. 2d at 290 (quoting *Rousseau v. K.N. Constr., Inc.*, 727 A.2d 190, 193 (R.I. 1999)). Of course, here students are such consumers, and JWU is such a commercial entity; so, the economic loss rule should not act as bar to Plaintiffs' conversions claim for this additional reason.

JWU's second argument against Plaintiffs' conversion claim relies on an inaccurate description of the claim alleged and the relief sought. Because Plaintiffs are seeking the return of

32

a prorated portion of the specific tuition and fees that were provided to JWU for particular education-related services, their claim does not, as JWU argues, "only identify an alleged intangible right," nor does it fail to identify "any amount of money specifically[] that JWU converted." MTD at 33 (citing *Montecalvo*, 682 A.2d at 929, *Kamel v. 5Church, Inc.*, 2019 U.S. Dist. LEXIS 144287, at *49 (W.D.N.C. Aug. 23, 2019) and *Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1144 (M.D. Fla. 2007)). Therefore, JWU's citations to cases addressing conversion are inapposite.

Indeed, JWU ignores case law indicating that, especially at the pleading stage, conversion claims are proper when, as here, the defendant holds monies owing to plaintiff that can be sufficiently identified. *See, e.g., PSW, Inc. v. VISA U.S.A., Inc.,* No. C.A. 04-347T, 2006 U.S. Dist. LEXIS 11763, at *51 (D.R.I. Feb. 3, 2006), *report and recommendation adopted*, 2006 U.S. Dist. LEXIS 12157, at *17 (D.R.I. Feb. 28, 2006) (Rhode Island law; "In order to prove a claim for conversion of money, the plaintiff must demonstrate, 'the defendant is under [an] obligation to deliver specific money to the plaintiff.'"); *IberiaBank v. Coconut 41, LLC*, 984 F. Supp. 2d 1283, 1306 (M.D. Fla. 2013), *aff'd*, 589 F. App'x 479 (11th Cir. 2014) (Florida law; "'For money to be the object of conversion there must be an obligation to keep intact or deliver the specific money in question, so that money can be identified.'" [Citations] The evidence establishes that the money in the Construction Draw Account satisfies the first requirement that there be specific and identifiable money."); *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs.*, LLC, 365 N.C. 520, 529, 723 S.E.2d 744, 750–51 (2012) (North Carolina law, "In the context of this conversion claim, we conclude that funds transferred electronically may be sufficiently identified through evidence of the specific source, specific amount, and specific destination of the funds in question.").

And JWU should not be heard to argue that it does not sufficiently segregate the specific tuition and fee monies paid by each student. That is at least true because colleges and universities must be able to separately account for student payments, as well as financial aid received on an individual student's behalf, because schools are frequently required to issue refunds to the government and the student for instances where the student enrolls, but does not complete classes for which the institution has received financial aid payments from the federal government. The Higher Education Act ("HEA"), Title IV, governs federally-funded student financial aid programs for college, university and post-secondary vocational training (*see* 20 U.S.C. §§ 1070–1099 (1990 & 1992 Supp.)), and the HEA requires that when a student withdraws partway through the enrollment period, the institution must refund a certain portion of the charges to account for its reduced educational obligations toward the student. *See Career Coll. Ass'n v. Riley*, 74 F.3d 1265, 1269 (D.C. Cir. 1996). In any event this is a factual issue not suitable for resolution at this time.

Finally, and related to the idea of alleging an obligation to return specific monies owed, courts have found in the precise context of refunds to college and university students that any monies paid for tuition or fees through a student's account that is subject to a possible refund is considered effectively under the student's "dominion and control." *See In re Adamo*, No. 814-73640-845, 2020 WL 2569924, at *1 (Bankr. E.D.N.Y. May 19, 2020). Therefore, JWU's citations to cases on this point – *see* MTD at 33 (citing *DeChristofaro v. Machala*, 685 A.2d 258, 263 (R.I. 1996); *Variety Wholesalers*, 723 S.E.2d at 750; *Lesti v. Wells Fargo Bank, N.A.*, 960 F. Supp. 2d 1311, 1325 (M.D. Fla. 2013)) – are inapposite. In other words, the Plaintiffs have properly alleged that JWU was under an obligation to refund the prorated portions of the tuition and fee payments.

For the above reasons, Plaintiffs have sufficiently alleged a claim for conversion.

## CONCLUSION

Plaintiffs alleged that they paid JWU substantial fees and tuition in exchange for in-person, on-campus educational experiences. When JWU closed its campus and moved instruction online last spring, Plaintiffs lost the benefit of that expensive bargain. JWU's rationales and justifications for its conduct do not mean that Plaintiffs should be forced to shoulder the economic consequences of campus closures. Instead, Plaintiffs are entitled to recover prorated fee and tuition refunds for services and instruction they did not receive. For all these reasons, Plaintiffs respectfully request that this Court deny JWU's MTD.

Dated: November 13, 2020

           _____/s/ Robert J. Caron_____
           Robert J. Caron (#5735)
           478A Broadway
           Providence, Rhode Island 02909
           P: (401) 621-8600
           rjcaron@robertjcaronlaw.com

           **ANASTOPOULO LAW FIRM, LLC**
           Eric M. Poulin**
           Roy T. Willey, IV**
           32 Ann Street
           Charleston, SC 29403
           P: (843) 614-8888
           F: (843) 494-5536
           Email: eric@akimlawfirm.com
                roy@akimlawfirm.com

           **BURSOR & FISHER, P.A.**
           Sarah N. Westcot**
           701 Brickell Ave, Suite 1420
           Miami, FL 33131
           Telephone: (305) 330-5512
           Facsimile: (305) 676-9006
           Email: swestcot@bursor.com

              -and-

**BURSOR & FISHER, P.A.**
Philip L. Fraietta**
Alec M. Leslie**
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com
       aleslie@bursor.com

**MOREA SCHWARTZ BRADHAM
FRIEDMAN & BROWN LLP**
John M. Bradham**
Peter Katzman
444 Madison Ave., 4th Floor
New York, New York 10022
Tel: (212) 695-8050
Email: jbradham@msbllp.com
      pkatzman@msbllp.com

    \*\* Admitted Pro Hac Vice

**ATTORNEYS FOR PLAINTIFFS AND THE
PROPOSED CLASS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing Memorandum in Opposition to Defendant's Motion to

Dismiss was served on all counsel of record on November 13, 2020, using the Court's CM/ECF

system, which will send notification of such filing.

                <u>/s/ Robert J. Caron</u>
                Robert J. Caron

# IN THE COURT OF CLAIMS OF OHIO

| | |
|---|---|
| BROOKE SMITH, Indv. | Case No. 2020-00321JD |
| Plaintiff | Judge Patrick M. McGrath |
| | Magistrate Holly True Shaver |
| v. | |
| | **ENTRY DENYING DEFENDANT'S** |
| THE OHIO STATE UNIVERSITY | **MOTION TO DISMISS** |
| Defendant | |

*FILED COURT OF CLAIMS OF OHIO 2020 SEP -9 PM 3: 41*

On June 30, 2020, defendant The Ohio State University (OSU) filed a motion to dismiss plaintiff's amended complaint pursuant to Civ.R. 12(B)(6).[1]  On July 30, 2020, plaintiff filed a response.  On August 6, 2020, defendant filed a reply.  For the reasons discussed below, defendant's motion shall be denied.

**Standard of Review**

A motion to dismiss filed pursuant to Civ.R. 12(B)(6) tests the sufficiency of the claims asserted in a complaint.  *Gordon v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 17AP-792, 2018-Ohio-2272, ¶ 13.  In construing a complaint upon a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim, the court "must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party."  *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988).  In order for a court to dismiss a complaint, it must appear beyond a doubt that the plaintiff can prove no set of facts entitling her to recovery.  *York v. Ohio State Highway Patrol*, 60 Ohio St.3d 143, 144, 573 N.E.2d 1063 (1991).  "In resolving a Civ.R. 12(B)(6) motion to dismiss, the trial court may consider only the

---

[1] Plaintiff also named the Ohio Department of Higher Education (ODHE) in her amended complaint.  However, on July 15, 2020, this court dismissed ODHE as a party in this action at the request of plaintiff.  Since ODHE is no longer a party in this action the June 30, 2020 motion to dismiss filed on behalf of ODHE is DENIED as moot.

JOURNALIZED

FILED
COURT OF CLAIMS
OF OHIO

2020 SEP -9 PM 3: 42

Case No. 2020-00321JD          -2-                    ENTRY

statements and facts contained in the pleadings, and may not consider or rely on evidence outside the complaint." *Powell v. Vorys*, 131 Ohio App.3d 681, 684, 723 N.E.2d 596 (10th Dist.1998).

**Factual Background**

Plaintiff is an undergraduate student at OSU and brings a complaint on behalf of herself and a proposed class. The proposed class consists of "all ODHE students who paid Defendants (sic) Spring Semester 2020 tuition and/or fees for in-person educational services that Defendants failed to provide, and whose tuition and fees have not been refunded." (Complaint at ¶ 29.) Plaintiff alleges that on March 9, 2020, OSU's president moved all classes online due to the Covid-19 pandemic. *Id*. at ¶ 20. Thereafter, OSU's president announced that all in-person classes would be conducted virtually for the remainder of the spring semester. *Id*. Plaintiff alleges that the online instruction provided by OSU is deficient compared to the in-person classes for which she and the proposed class members contracted. *Id*. The claims brought on behalf of plaintiff and the proposed class seek to recover "a refund of all tuition and fees for services, facilities, access and/or opportunities that Defendants have not provided." *Id*. at ¶ 22. Plaintiff brings claims for breach of contract, unjust enrichment, and conversion on behalf of herself and the putative class members.

In its motion, defendant argues that plaintiff's claims are for educational malpractice, which is not a viable claim in Ohio. Defendant alternatively argues that the unjust enrichment and conversion claims should be dismissed because unjust enrichment and conversion cannot be pleaded alternatively to breach of contract in this circumstance.

**Plaintiff's breach of contract claim is not an educational malpractice claim**

According to defendant, plaintiff's amended complaint asserts that online learning is substandard to in-person classes, and that plaintiff points to no specific contractual

JOURNALIZED

Case No. 2020-00321JD                    -3-                    ENTRY

provision stating that classes would be conducted in person.  Therefore, defendant argues that plaintiff's breach of contract claim is an educational malpractice claim in disguise, which is not a recognized claim in Ohio.  Consequently, defendant argues, plaintiff's breach of contract claim concerning a refund of tuition and fees should be dismissed.

However, when a trial court determines whether an action sets forth a claim upon which relief can be granted, a trial court should look to the body of the complaint. *Guillory v. Ohio Dept. of Rehab. & Correction*, 10th Dist. Franklin Nos. 07AP-861, 07AP-928, 2008-Ohio-2299, ¶ 11.  A trial court's role generally does not include recasting a party's pleadings.  *See Greenlaw v. United States*, 554 U.S. 237, 243, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008) (stating that in "our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present").

Plaintiff alleges that when she paid tuition to defendant a contract was created and that by holding classes virtually and not refunding a portion of the previously paid tuition and fees, defendant breached said contract.  The essence of plaintiff's breach of contract claim is that she contracted for in-person classes and received online classes instead.  The mere mention of possible consequences to plaintiff's educational or professional future does not render plaintiff's complaint a claim for educational malpractice.  Accordingly, making all reasonable inferences in plaintiff's favor, the court finds that plaintiff may state a claim for breach of contract.  Therefore, defendant's motion to dismiss plaintiff's breach of contract claim is DENIED.

**Plaintiff can plead unjust enrichment and conversion in the alternative**

Defendant alternatively argues that plaintiff's unjust enrichment and conversion claims should be dismissed because unjust enrichment and conversion cannot be pleaded in the alternative to a breach of contract claim absent an allegation of fraud or

JOURNALIZED



FILED
COURT OF CLAIMS
OF OHIO

2020 SEP -9 PM 3: 42

Case No. 2020-00321JD       -4-       ENTRY

bad faith, or if the parties do not dispute the existence of the contract governing their relationship. Plaintiff does not allege fraud or bad faith. And defendant argues that the parties agree that a contract exists between them. It is well settled that the relationship between a university and a student enrolled therein is contractual in nature. *Savoy v. Univ. of Akron*, 10th Dist. Franklin No. 13AP-696, 2014-Ohio-3043, ¶ 24.

Defendant refers to case law, including *Savoy*, to argue that the university catalog, handbook, and other guidelines supplied to the student constitute the terms of a contract between the university and the student. However, in the same motion, defendant asserts that plaintiff has failed to point to any contractual provision that covers the basis of plaintiff's breach of contract claim. As plaintiff correctly argues, it is not known at this point which express contract, if any, governs plaintiff's claims. Furthermore, plaintiff asserts that defendant is in possession of the documents covering her claim which is only available to her through discovery. Therefore, not only do the parties disagree as to which contract governs this case, but they also disagree as to the existence of one or more of the alleged contracts. In construing the complaint under the Civ.R. 12(B)(6) standard, the court "must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party." *Mitchell*, 40 Ohio St.3d at 192, 532 N.E.2d 753. Because the existence of the underlying contract is disputed, it would be premature for the court to dismiss plaintiff's unjust enrichment and conversion claims. Furthermore, it would also be premature for the court to dismiss unjust enrichment and conversion claims pleaded in the alternative at this stage of the litigation. *See Cristino v. Admr., Ohio Bur. of Worker's Comp.*, 10th Dist. Franklin No. 12AP-60, 2012-Ohio-4420, ¶ 26. ("The mere presence of both [breach of contract and unjust enrichment] claims in a complaint does not warrant the dismissal of the unjust-enrichment claim on a Civ.R. 12(B)(6) motion."). Accordingly, defendant's motion to dismiss plaintiff's unjust enrichment and conversion claims is denied.

JOURNALIZED

FILED
COURT OF CLAIMS
OF OHIO

2020 SEP -9 PM 3: 42

Case No. 2020-00321JD                    -5-                                    ENTRY

**Conclusion**

Based upon the foregoing, defendant's motion to dismiss is DENIED.  Defendant shall file its answer to plaintiff's amended complaint in the normal course.

PATRICK M. MCGRATH
Judge

cc:

Randall W Knutti                          Scott D Simpkins
Peter E DeMarco                           55 Public Square Suite 1950
Jeanna V Jacobus                          Cleveland OH  44113
Assistant Attorneys General
150 East Gay Street 18th Floor
Columbus OH  43215-3130

006

JOURNALIZED