# EXHIBIT 1

KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

> United States Code Annotated
>   Title 20. Education
>     Chapter 28. Higher Education Resources and Student Assistance (Refs & Annos)
>       Subchapter IV. Student Assistance (Refs & Annos)
>         Part G. General Provisions Relating to Student Assistance Programs (Refs & Annos)

20 U.S.C.A. § 1094

§ 1094. Program participation agreements

Currentness

**(a) Required for programs of assistance; contents**

In order to be an eligible institution for the purposes of any program authorized under this subchapter, an institution must be an institution of higher education or an eligible institution (as that term is defined for the purpose of that program) and shall, except with respect to a program under subpart 4 of part A, enter into a program participation agreement with the Secretary. The agreement shall condition the initial and continuing eligibility of an institution to participate in a program upon compliance with the following requirements:

**(1)** The institution will use funds received by it for any program under this subchapter and any interest or other earnings thereon solely for the purpose specified in and in accordance with the provision of that program.

**(2)** The institution shall not charge any student a fee for processing or handling any application, form, or data required to determine the student's eligibility for assistance under this subchapter or the amount of such assistance.

**(3)** The institution will establish and maintain such administrative and fiscal procedures and records as may be necessary to ensure proper and efficient administration of funds received from the Secretary or from students under this subchapter, together with assurances that the institution will provide, upon request and in a timely fashion, information relating to the administrative capability and financial responsibility of the institution to--

  **(A)** the Secretary;

  **(B)** the appropriate guaranty agency; and

  **(C)** the appropriate accrediting agency or association.

**(4)** The institution will comply with the provisions of subsection (c) of this section and the regulations prescribed under that subsection, relating to fiscal eligibility.

**(5)** The institution will submit reports to the Secretary and, in the case of an institution participating in a program under part B or part E, to holders of loans made to the institution's students under such parts at such times and containing such information as the Secretary may reasonably require to carry out the purpose of this subchapter.

**(6)** The institution will not provide any student with any statement or certification to any lender under part B that qualifies the student for a loan or loans in excess of the amount that student is eligible to borrow in accordance with sections 1075(a), 1078(a)(2), and 1078(b)(1)(A) and (B) of this title.

**(7)** The institution will comply with the requirements of section 1092 of this title.

**(8)** In the case of an institution that advertises job placement rates as a means of attracting students to enroll in the institution, the institution will make available to prospective students, at or before the time of application (A) the most recent available data concerning employment statistics, graduation statistics, and any other information necessary to substantiate the truthfulness of the advertisements, and (B) relevant State licensing requirements of the State in which such institution is located for any job for which the course of instruction is designed to prepare such prospective students.

**(9)** In the case of an institution participating in a program under part B or D, the institution will inform all eligible borrowers enrolled in the institution about the availability and eligibility of such borrowers for State grant assistance from the State in which the institution is located, and will inform such borrowers from another State of the source for further information concerning such assistance from that State.

**(10)** The institution certifies that it has in operation a drug abuse prevention program that is determined by the institution to be accessible to any officer, employee, or student at the institution.

**(11)** In the case of any institution whose students receive financial assistance pursuant to section 1091(d) of this title, the institution will make available to such students a program proven successful in assisting students in obtaining a certificate of high school equivalency.

**(12)** The institution certifies that--

    **(A)** the institution has established a campus security policy; and

    **(B)** the institution has complied with the disclosure requirements of section 1092(f) of this title.

**(13)** The institution will not deny any form of Federal financial aid to any student who meets the eligibility requirements of this subchapter on the grounds that the student is participating in a program of study abroad approved for credit by the institution.

**(14)(A)** The institution, in order to participate as an eligible institution under part B or D, will develop a Default Management Plan for approval by the Secretary as part of its initial application for certification as an eligible institution and will implement such Plan for two years thereafter.

**(B)** Any institution of higher education which changes ownership and any eligible institution which changes its status as a parent or subordinate institution shall, in order to participate as an eligible institution under part B or D, develop a Default Management Plan for approval by the Secretary and implement such Plan for two years after its change of ownership or status.

**(C)** This paragraph shall not apply in the case of an institution in which (i) neither the parent nor the subordinate institution has a cohort default rate in excess of 10 percent, and (ii) the new owner of such parent or subordinate institution does not, and has not, owned any other institution with a cohort default rate in excess of 10 percent.

**(15)** The institution acknowledges the authority of the Secretary, guaranty agencies, lenders, accrediting agencies, the Secretary of Veterans Affairs, and the State agencies under subpart 1 of part H to share with each other any information pertaining to the institution's eligibility to participate in programs under this subchapter or any information on fraud and abuse.

**(16)(A)** The institution will not knowingly employ an individual in a capacity that involves the administration of programs under this subchapter, or the receipt of program funds under this subchapter, who has been convicted of, or has pled nolo contendere or guilty to, a crime involving the acquisition, use, or expenditure of funds under this subchapter, or has been judicially determined to have committed fraud involving funds under this subchapter or contract with an institution or third party servicer that has been terminated under section 1082 of this title involving the acquisition, use, or expenditure of funds under this subchapter, or who has been judicially determined to have committed fraud involving funds under this subchapter.

**(B)** The institution will not knowingly contract with or employ any individual, agency, or organization that has been, or whose officers or employees have been--

> **(i)** convicted of, or pled nolo contendere or guilty to, a crime involving the acquisition, use, or expenditure of funds under this subchapter; or

> **(ii)** judicially determined to have committed fraud involving funds under this subchapter.

**(17)** The institution will complete surveys conducted as a part of the Integrated Postsecondary Education Data System (IPEDS) or any other Federal postsecondary institution data collection effort, as designated by the Secretary, in a timely manner and to the satisfaction of the Secretary.

**(18)** The institution will meet the requirements established pursuant to section 1092(g) of this title.

**(19)** The institution will not impose any penalty, including the assessment of late fees, the denial of access to classes, libraries, or other institutional facilities, or the requirement that the student borrow additional funds, on any student because of the student's inability to meet his or her financial obligations to the institution as a result of the delayed disbursement of the proceeds of a loan made under this subchapter due to compliance with the provisions of this subchapter, or delays attributable to the institution.

**(20)** The institution will not provide any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments or financial aid to any persons or entities engaged in any student recruiting or admission activities or in making decisions regarding the award of student financial assistance, except that this paragraph shall not apply to the recruitment of foreign students residing in foreign countries who are not eligible to receive Federal student assistance.

**(21)** The institution will meet the requirements established by the Secretary and accrediting agencies or associations, and will provide evidence to the Secretary that the institution has the authority to operate within a State.

**(22)** The institution will comply with the refund policy established pursuant to section 1091b of this title.

**(23)(A)** The institution, if located in a State to which section 20503(b) of Title 52 does not apply, will make a good faith effort to distribute a mail voter registration form, requested and received from the State, to each student enrolled in a degree or certificate program and physically in attendance at the institution, and to make such forms widely available to students at the institution.

**(B)** The institution shall request the forms from the State 120 days prior to the deadline for registering to vote within the State. If an institution has not received a sufficient quantity of forms to fulfill this section from the State within 60 days prior to the deadline for registering to vote in the State, the institution shall not be held liable for not meeting the requirements of this section during that election year.

**(C)** This paragraph shall apply to general and special elections for Federal office, as defined in section 30101(3) of Title 52, and to the elections for Governor or other chief executive within such State). [1]

**(D)** The institution shall be considered in compliance with the requirements of subparagraph (A) for each student to whom the institution electronically transmits a message containing a voter registration form acceptable for use in the State in which the institution is located, or an Internet address where such a form can be downloaded, if such information is in an electronic message devoted exclusively to voter registration.

**(24)** In the case of a proprietary institution of higher education (as defined in section 1002(b) of this title), such institution will derive not less than ten percent of such institution's revenues from sources other than funds provided under this subchapter, as calculated in accordance with subsection (d)(1), or will be subject to the sanctions described in subsection (d)(2).

**(25)** In the case of an institution that participates in a loan program under this subchapter, the institution will--

> **(A)** develop a code of conduct with respect to such loans with which the institution's officers, employees, and agents shall comply, that--
>
>> **(i)** prohibits a conflict of interest with the responsibilities of an officer, employee, or agent of an institution with respect to such loans; and

      **(ii)** at a minimum, includes the provisions described in subsection (e);

  **(B)** publish such code of conduct prominently on the institution's website; and

  **(C)** administer and enforce such code by, at a minimum, requiring that all of the institution's officers, employees, and agents with responsibilities with respect to such loans be annually informed of the provisions of the code of conduct.

**(26)** The institution will, upon written request, disclose to the alleged victim of any crime of violence (as that term is defined in section 16 of Title 18), or a nonforcible sex offense, the report on the results of any disciplinary proceeding conducted by such institution against a student who is the alleged perpetrator of such crime or offense with respect to such crime or offense. If the alleged victim of such crime or offense is deceased as a result of such crime or offense, the next of kin of such victim shall be treated as the alleged victim for purposes of this paragraph.

**(27)** In the case of an institution that has entered into a preferred lender arrangement, the institution will at least annually compile, maintain, and make available for students attending the institution, and the families of such students, a list, in print or other medium, of the specific lenders for loans made, insured, or guaranteed under this subchapter or private education loans that the institution recommends, promotes, or endorses in accordance with such preferred lender arrangement. In making such list, the institution shall comply with the requirements of subsection (h).

**(28)(A)** The institution will, upon the request of an applicant for a private education loan, provide to the applicant the form required under section 1638(e)(3) of Title 15, and the information required to complete such form, to the extent the institution possesses such information.

**(B)** For purposes of this paragraph, the term "private education loan" has the meaning given such term in section 1650 of Title 15.

**(29)** The institution certifies that the institution--

  **(A)** has developed plans to effectively combat the unauthorized distribution of copyrighted material, including through the use of a variety of technology-based deterrents; and

  **(B)** will, to the extent practicable, offer alternatives to illegal downloading or peer-to-peer distribution of intellectual property, as determined by the institution in consultation with the chief technology officer or other designated officer of the institution.

**(b) Hearings**

**(1)** An institution that has received written notice of a final audit or program review determination and that desires to have such determination reviewed by the Secretary shall submit to the Secretary a written request for review not later than 45 days after receipt of notification of the final audit or program review determination.

**(2)** The Secretary shall, upon receipt of written notice under paragraph (1), arrange for a hearing and notify the institution within 30 days of receipt of such notice the date, time, and place of such hearing. Such hearing shall take place not later than 120 days from the date upon which the Secretary notifies the institution.

**(c) Audits; financial responsibility; enforcement of standards**

**(1)** Notwithstanding any other provisions of this subchapter, the Secretary shall prescribe such regulations as may be necessary to provide for--

**(A)(i)** except as provided in clauses (ii) and (iii), a financial audit of an eligible institution with regard to the financial condition of the institution in its entirety, and a compliance audit of such institution with regard to any funds obtained by it under this subchapter or obtained from a student or a parent who has a loan insured or guaranteed by the Secretary under this subchapter, on at least an annual basis and covering the period since the most recent audit, conducted by a qualified, independent organization or person in accordance with standards established by the Comptroller General for the audit of governmental organizations, programs, and functions, and as prescribed in regulations of the Secretary, the results of which shall be submitted to the Secretary and shall be available to cognizant guaranty agencies, eligible lenders, State agencies, and the appropriate State agency notifying the Secretary under subpart 1 of part H, except that the Secretary may modify the requirements of this clause with respect to institutions of higher education that are foreign institutions, and may waive such requirements with respect to a foreign institution whose students receive less than $500,000 in loans under this subchapter during the award year preceding the audit period;

**(ii)** with regard to an eligible institution which is audited under chapter 75 of Title 31, deeming such audit to satisfy the requirements of clause (i) for the period covered by such audit; or

**(iii)** at the discretion of the Secretary, with regard to an eligible institution (other than an eligible institution described in section 1002(a)(1)(C) of this title) that has obtained less than $200,000 in funds under this subchapter during each of the 2 award years that precede the audit period and submits a letter of credit payable to the Secretary equal to not less than ½ of the annual potential liabilities of such institution as determined by the Secretary, deeming an audit conducted every 3 years to satisfy the requirements of clause (i), except for the award year immediately preceding renewal of the institution's eligibility under section 1099c(g) of this title;

**(B)** in matters not governed by specific program provisions, the establishment of reasonable standards of financial responsibility and appropriate institutional capability for the administration by an eligible institution of a program of student financial aid under this subchapter, including any matter the Secretary deems necessary to the sound administration of the financial aid programs, such as the pertinent actions of any owner, shareholder, or person exercising control over an eligible institution;

**(C)(i)** except as provided in clause (ii), a compliance audit of a third party servicer (other than with respect to the servicer's functions as a lender if such functions are otherwise audited under this part and such audits meet the requirements of this clause), with regard to any contract with an eligible institution, guaranty agency, or lender for administering or servicing any aspect of the student assistance programs under this subchapter, at least once every year and covering the period since the most recent audit, conducted by a qualified, independent organization or person in accordance with standards established by the

Comptroller General for the audit of governmental organizations, programs, and functions, and as prescribed in regulations of the Secretary, the results of which shall be submitted to the Secretary; or

**(ii)** with regard to a third party servicer that is audited under chapter 75 of Title 31, such audit shall be deemed to satisfy the requirements of clause (i) for the period covered by such audit;

**(D)(i)** a compliance audit of a secondary market with regard to its transactions involving, and its servicing and collection of, loans made under this subchapter, at least once a year and covering the period since the most recent audit, conducted by a qualified, independent organization or person in accordance with standards established by the Comptroller General for the audit of governmental organizations, programs, and functions, and as prescribed in regulations of the Secretary, the results of which shall be submitted to the Secretary; or

**(ii)** with regard to a secondary market that is audited under chapter 75 of Title 31, such audit shall be deemed to satisfy the requirements of clause (i) for the period covered by the audit;

**(E)** the establishment, by each eligible institution under part B responsible for furnishing to the lender the statement required by section 1078(a)(2)(A)(i) of this title, of policies and procedures by which the latest known address and enrollment status of any student who has had a loan insured under this part and who has either formally terminated his enrollment, or failed to re-enroll on at least a half-time basis, at such institution, shall be furnished either to the holder (or if unknown, the insurer) of the note, not later than 60 days after such termination or failure to re-enroll;

**(F)** the limitation, suspension, or termination of the participation in any program under this subchapter of an eligible institution, or the imposition of a civil penalty under paragraph (3)(B) whenever the Secretary has determined, after reasonable notice and opportunity for hearing, that such institution has violated or failed to carry out any provision of this subchapter, any regulation prescribed under this subchapter, or any applicable special arrangement, agreement, or limitation, except that no period of suspension under this section shall exceed 60 days unless the institution and the Secretary agree to an extension or unless limitation or termination proceedings are initiated by the Secretary within that period of time;

**(G)** an emergency action against an institution, under which the Secretary shall, effective on the date on which a notice and statement of the basis of the action is mailed to the institution (by registered mail, return receipt requested), withhold funds from the institution or its students and withdraw the institution's authority to obligate funds under any program under this subchapter, if the Secretary--

**(i)** receives information, determined by the Secretary to be reliable, that the institution is violating any provision of this subchapter, any regulation prescribed under this subchapter, or any applicable special arrangement, agreement, or limitation,

**(ii)** determines that immediate action is necessary to prevent misuse of Federal funds, and

**(iii)** determines that the likelihood of loss outweighs the importance of the procedures prescribed under subparagraph (D) for limitation, suspension, or termination,

except that an emergency action shall not exceed 30 days unless limitation, suspension, or termination proceedings are initiated by the Secretary against the institution within that period of time, and except that the Secretary shall provide the institution an opportunity to show cause, if it so requests, that the emergency action is unwarranted;

**(H)** the limitation, suspension, or termination of the eligibility of a third party servicer to contract with any institution to administer any aspect of an institution's student assistance program under this subchapter, or the imposition of a civil penalty under paragraph (3)(B), whenever the Secretary has determined, after reasonable notice and opportunity for a hearing, that such organization, acting on behalf of an institution, has violated or failed to carry out any provision of this subchapter, any regulation prescribed under this subchapter, or any applicable special arrangement, agreement, or limitation, except that no period of suspension under this subparagraph shall exceed 60 days unless the organization and the Secretary agree to an extension, or unless limitation or termination proceedings are initiated by the Secretary against the individual or organization within that period of time; and

**(I)** an emergency action against a third party servicer that has contracted with an institution to administer any aspect of the institution's student assistance program under this subchapter, under which the Secretary shall, effective on the date on which a notice and statement of the basis of the action is mailed to such individual or organization (by registered mail, return receipt requested), withhold funds from the individual or organization and withdraw the individual or organization's authority to act on behalf of an institution under any program under this subchapter, if the Secretary--

**(i)** receives information, determined by the Secretary to be reliable, that the individual or organization, acting on behalf of an institution, is violating any provision of this subchapter, any regulation prescribed under this subchapter, or any applicable special arrangement, agreement, or limitation,

**(ii)** determines that immediate action is necessary to prevent misuse of Federal funds, and

**(iii)** determines that the likelihood of loss outweighs the importance of the procedures prescribed under subparagraph (F), for limitation, suspension, or termination,

except that an emergency action shall not exceed 30 days unless the limitation, suspension, or termination proceedings are initiated by the Secretary against the individual or organization within that period of time, and except that the Secretary shall provide the individual or organization an opportunity to show cause, if it so requests, that the emergency action is unwarranted.

**(2)** If an individual who, or entity that, exercises substantial control, as determined by the Secretary in accordance with the definition of substantial control in subpart 3 of part H, over one or more institutions participating in any program under this subchapter, or, for purposes of paragraphs (1)(H) and (I), over one or more organizations that contract with an institution to administer any aspect of the institution's student assistance program under this subchapter, is determined to have committed one or more violations of the requirements of any program under this subchapter, or has been suspended or debarred in accordance with the regulations of the Secretary, the Secretary may use such determination, suspension, or debarment as the basis for imposing an emergency action on, or limiting, suspending, or terminating, in a single proceeding, the participation of any or all institutions under the substantial control of that individual or entity.

**(3)(A)** Upon determination, after reasonable notice and opportunity for a hearing, that an eligible institution has engaged in substantial misrepresentation of the nature of its educational program, its financial charges, or the employability of its graduates,

the Secretary may suspend or terminate the eligibility status for any or all programs under this subchapter of any otherwise eligible institution, in accordance with procedures specified in paragraph (1)(D) of this subsection, until the Secretary finds that such practices have been corrected.

**(B)(i)** Upon determination, after reasonable notice and opportunity for a hearing, that an eligible institution--

**(I)** has violated or failed to carry out any provision of this subchapter or any regulation prescribed under this subchapter; or

**(II)** has engaged in substantial misrepresentation of the nature of its educational program, its financial charges, and the employability of its graduates,

the Secretary may impose a civil penalty upon such institution of not to exceed $25,000 for each violation or misrepresentation.

**(ii)** Any civil penalty may be compromised by the Secretary. In determining the amount of such penalty, or the amount agreed upon in compromise, the appropriateness of the penalty to the size of the institution of higher education subject to the determination, and the gravity of the violation, failure, or misrepresentation shall be considered. The amount of such penalty, when finally determined, or the amount agreed upon in compromise, may be deducted from any sums owing by the United States to the institution charged.

**(4)** The Secretary shall publish a list of State agencies which the Secretary determines to be reliable authority as to the quality of public postsecondary vocational education in their respective States for the purpose of determining eligibility for all Federal student assistance programs.

**(5)** The Secretary shall make readily available to appropriate guaranty agencies, eligible lenders, State agencies notifying the Secretary under subpart 1 of part H, and accrediting agencies or associations the results of the audits of eligible institutions conducted pursuant to paragraph (1)(A).

**(6)** The Secretary is authorized to provide any information collected as a result of audits conducted under this section, together with audit information collected by guaranty agencies, to any Federal or State agency having responsibilities with respect to student financial assistance, including those referred to in subsection (a)(15) of this section.

**(7)** Effective with respect to any audit conducted under this subsection after December 31, 1988, if, in the course of conducting any such audit, the personnel of the Department of Education discover, or are informed of, grants or other assistance provided by an institution in accordance with this subchapter for which the institution has not received funds appropriated under this subchapter (in the amount necessary to provide such assistance), including funds for which reimbursement was not requested prior to such discovery or information, such institution shall be permitted to offset that amount against any sums determined to be owed by the institution pursuant to such audit, or to receive reimbursement for that amount (if the institution does not owe any such sums).

**(d) Implementation of non-subchapter IV revenue requirement**

**(1) Calculation**

PAGES OMITTED